## No. 3211

### Second Circuit

### CARTER v. COLFAX LUMBER & CREOSOTING CO. ET AL.

(November 8, 1928. Opinion and Decree.)
(December 19, 1928. Rehearing Refused.)

J. W. Jones, Jr., of Natchitoches, attorney for plaintiff, appellee.

Pujo, Bell and Hardin, of Lake Charles, attorneys for defendant, appellant.

ODOM, J. Plaintiff brings this suit for compensation under the Workmen's Compensation Law, as finally amended by Act 85 of 1926. He alleges that the Colfax Lumber and Creosoting Company owns and operates a sawmill at Colfax, Louisiana, and that it employed Tom Matkins to cut and deliver on the railroad cars at or near Clarence station, in Natchitoches Parish, Louisiana, certain logs belonging to them, at a stipulated price per thousand feet; that he was employed by the said Matkins to assist in the cutting and loading said logs on the railroad, and that, while so employed, he suffered an injury to his right leg, which injury has totally and permanently incapacitated him to perform labor of a reasonable character, and he asks full compensation for 400 weeks.

Plaintiff bases his right to recover compensation from the Colfax Lumber and Creosoting Company on Section 6, Act 85 of 1926, which reads as follows:

"That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed * * *."

One of the defendants, Tom Matkins, made but a nominal defense, and, as he has not appealed from the judgment rendered against him, the same is final as to him.

The question before this Court is whether the Colfax Lumber and Creosoting Company is liable to plaintiff.

The defense which it makes is that there were no contractual relations between it and the plaintiff; that it had a contract with Tom Matkins to purchase logs from him at so much per thousand feet, delivered on the railroad, and that it did purchase and pay for the logs which were being loaded by the plaintiff at the time he was injured, and that, under the law and jurisprudence, the plaintiff was in no sense its employee.

In support of that contention, its counsel cite and rely upon the case of West vs. Martin Lumber Company et al., 7 La. App. 366, and the case of Morrison vs. Weber-King Mfg. Company, 6 La. App. 388. In the case of West vs. Martin Lumber Company et al., supra, it was held that under Section 6 of the Workmen's Compensation Law, as amended by Act 85 of 1926, a lumber company is not liable to pay compensation for the employee of a person from whom it purchased logs, the relation of master and servant being nonexistent. To the same effect is the holding in the case of Morrison vs. Weber-King Mfg. Company. These cases would be sufficient authority to support defendant's contention and relieve it of liability if the facts showed that it was the purchaser of the logs from Tom Matkins. In the West

vs. Martin Lumber Company et al. case, supra, the Court found as a fact that the lumber company was a purchaser of a commodity prepared and supplied by another; that the sale of the logs was only made and perfected after the logs were hauled to the place of delivery, were scaled and the price agreed upon. In the Morrison vs. Weber-King Mfg. Company case, supra, the Court found as a fact that the defendant had contracted to buy the saw logs, delivered on the skidder at its mill, for a consideration of $10.00 per thousand and that the defendant had no interest in the logs as owner, or otherwise, until they were delivered and paid for at its mill, and that it was simply buying a commodity which was owned, prepared, transported and delivered by a man named Robinson.

The facts in the case at bar, clearly distinguish it from the two cases cited and relied upon by the defendant. The defendant, Colfax Lumber and Creosoting Company, owns and operates a sawmill at Colfax, Louisiana. As a part of its business in operating this sawmill, it was, and had been for a number of years, its custom to buy timber and to employ Tom Matkins, its co-defendant, to cut, log and load said timber on the railroad. The testimony is not clear on the point as to whether it had any other persons to log timber in the vicinity where the timber involved in this litigation was situated, but we infer that practically all of the timber which defendant had purchased in that vicinity had been cut and logged for the defendant by Tom Matkins. The testimony shows that for a period of some two or two and one-half years Matkins had owned his own logging outfit, had cut, hauled and loaded logs for the defendant, and that his compensation therefor was generally $10.00 per thousand feet. Matkins, according to his testimony, considered all along that he

was an employee of defendant company for that purpose. The defendant's custom, it appears, was to buy standing timber and take in its own name a deed therefor, and then to employ Matkins to log the timber for it. Under such circumstances, we think it clear that under Section 6 of Act 85 of 1926, the defendant would be liable for compensation to an employee of Matkins who was employed to execute contracts which were a part of defendant's business.

But, the defendant, Colfax Lumber and Creosoting Company, attempts to draw a distinction between such cases and the case at bar, the distinction being that Tom Matkins himself purchased this particular timber from the owner, Airey, and that it agreed to pay Matkins $20.00 per thousand for the timber loaded on the cars.

The testimony of Mr. Lagrone, Manager of the defendant lumber company, is to the effect that he agreed to pay Tom Matkins the stipulated sum of $20.00 per thousand for timber loaded on the railroad track; that he had nothing whatever to do with the purchasing of this timber from Airey, owner thereof; and that his dealings with Matkins, with reference to this particular timber, were as follows: The company paid to Airey, the owner of the timber, $10.00 per thousand feet for the stumpage and $10.00 per thousand feet to Matkins for the cutting, logging and loading of said timber; that his ledger shows that he charged Matkins with the stumpage of the timber at $10.00 per thousand, which it paid Airey, and $10.00 per thousand, which it paid Matkins for handling the logs, and that it gave him credit for the logs, delivered, at $20.00 per thousand. Lagrone further testified that the agreement that $10.00 per thousand should be paid to Matkins, and a like sum to Airey for

the stumpage of the timber, was made at a conference between the three in his office at Colfax, Louisiana.

The testimony of Matkins, with reference to the transaction, is that he went to Airey and arranged with him for his timber at $10.00 per thousand; and, while his testimony is somewhat conflicting as to whether he was representing the defendant company in the purchase of the timber, his testimony, as a whole, shows that, while he personally made arrangements with Airey for his timber at $10.00 per thousand, he was, in doing so, making the purchase for the defendant company and that he was, in effect, acting as its agent. On that point, he stated that he had been the agent and in the employ of the defendant company for several years, and was asked if he had bought the Airey timber for it, and he answered:

"A. I didn't say that, did I?"
He was then asked:
"Q. You were their agent and representative, were you not?
"A. Yes, sir, I was working for them at the time I bought it.
"Q. And you were after getting them what timbers you could?
"A. Yes, sir.
"Q. And you got these timbers for them?
"A. Yes, sir.
"Q. And you shipped them where they instructed you to ship them?
"A. Yes, sir, I shipped them to Fred Bremen Lumber Company.
"Q. And you didn't have anything to do with paying for the stumpage?
"A. No, sir.
"Q. The paying for the stumpage was looked after and attended to by the Colfax Lumber and Creosoting Company altogether?
"A. Yes, sir.
"Q. And you were paid $10.00 per thousand to cut them and put them on the railroad cars?
"A. Yes, sir."

On further examination by Mr. Hardin, attorney for defendant company, he stated that he was present when a check was issued to Airey by the defendant company for the stumpage, and that he carried Mr. Airey to the office of the lumber company for the purpose of getting his check; and he was asked:

"Q. Why did you carry him there?"

And he answered:

"A. Well, there was a little confusion come up about the scale and I told him I would carry him down there and settle up with him and turn the job loose."

He further testified that he did not turn the job loose because all differences were settled.

The testimony of Mr. Airey, with reference to the transaction, is that after some of his timber was cut and scaled by a man of the name of Caldwell, presumably representing the defendant company, he went to the Colfax Lumber and Creosoting Company's office, accompanied by Mr. Matkins, for the purpose of receiving pay for the stumpage, and that he was paid by the company. He testified that when the logs were cut, they were scaled by Mr. Caldwell, and the scale ticket delivered to Mr. Matkins, and he stated:

"These checks in payment of these timbers were issued on the scale ticket of the inspector at the time of the scalage and they were branded by the inspector, Mr. Caldwell, and this scalage ticket that he left on the ground with Mr. Matkins was the cash order or the same as a cash order to the Colfax Lumber and Creosoting Company for the money."

With reference to the testimony of Tom Matkins, it is noted that, while on direct examination, he was asked by whom he had been employed for the last two or three

years, and he stated, by the Colfax Lumber Company; and, asked in what capacity, he stated that he was hauling by the thousand; and was asked the following:

"Q. They were to pay you $10.00 to haul Airey's timber?"

And he answered:

"A. Yes, sir."

Taking the testimony as a whole, construing it altogether, our conclusion is that the defendant lumber company was not purchasing this timber from Tom Matkins at so much per thousand, but that Matkins was an employee of the defendant lumber company to log this particular timber, at so much per thousand feet, and that the defendant company was logging its mill through Matkins, as an employee. As we have already stated, Matkins said that he bought the Airey timber for the defendant company, and it is admitted that the stumpage price was paid to Airey by the defendant. We can see no essential difference between a case of this kind and a case where the stumpage was purchased by the defendant under a deed and Matkins employed to cut and log it.

The District Judge correctly held, we think, that the defendant logging company is liable to the plaintiff who was employed by Matkins.

We think it unnecessary to discuss the case further, as the District Court awarded compensation in accordance with the testimony which is clear as to the plaintiff's injuries and the extent of his disability.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is affirmed, with costs in both courts.

REYNOLDS, J., dissents.