**JAMES v. DEAR & JOHNSON, Inc. \***
**No. 1668.**

Court of Appeal of Louisiana. First Circuit.

Jan. 12, 1937.

\*Rehearing denied March 5, 1937.

26

Hawthorn, Stafford & Pitts, of Alexandria, for appellant.

Wood & Wood, of Leesville, for appellee.

OTT, Judge.

Plaintiff claims to have sustained an injury resulting in a hernia on his left side caused from attempting to turn over a tree top while engaged in getting out fuel wood for the defendant on October 28, 1935. He alleges that he was receiving $1.50 per day, and asks for compensation of 65 per cent. of his said daily wage for total and permanent disability for a period not to exceed 400 weeks. Defendant made what, in effect, is a general denial to the allegations of plaintiff's petition, but the defense is narrowed down to the one contention on the part of defendant, i. e, that plaintiff at the time of his injury was working for Jim James, his brother, and was not in the employ of the defendant.

Judgment went in favor of plaintiff and against defendant for 65 per cent. of the daily wage of $1.50 for total disability, for a period not to exceed 400 weeks. Defendant has appealed.

Defendant is a corporation engaged in the operation of a gravel pit and the extraction and sale of gravel therefrom. In connection with its business, the defendant operates about three and one-half miles of rail or tram road over which it transports its gravel to a trunk line railroad for shipment to various parts of the country. In order to furnish fuel for its locomotives and engines, defendant had contracted with Jim James to get out and haul pine knots, dead limbs, and tops to convenient places on its tram road for use in the locomotives and engines. Jim James was paid $1.75 per cord for this fuel wood.

It appears from the evidence that the defendant bought the wood from nearby owners and had Jim James cut and haul this wood, which is referred to mostly in the testimony as "pine knots." The defendant furnished a truck with which the wood was hauled from the woods. Jim James hired the driver of the truck. It appears that plaintiff went to Mr. Johnson, who was operating the pit for defendant, and asked for a job; that Mr. Johnson told plaintiff to go and see his brother Jim and tell Jim to give him a job getting out these knots. On this suggestion from Johnson, Jim James put his brother Tom, the plaintiff, to work in getting out this fuel wood, and it was while so employed that plaintiff was injured. Plaintiff was paid 75 cents per cord for the wood cut by him and averaged some two or three cords per day. Jim James was given credit for the total number of cords of wood cut and delivered by him and his men. Orders were given by Jim James to his men for groceries on a store operated by the Pitkin Mercantile Company, and these orders were sent to and approved by a member of defendant corporation, who kept the books, and the amount of the orders given by or for all the men working for Jim James was charged to the amount coming to him for the fuel wood cut and delivered in the manner stated above.

The defendant contends that Jim James was an independent contractor and that plaintiff, as an employee of this contractor, had no contractual relation with the defendant company; that defendant merely bought the fuel wood from Jim James at a fixed price per cord and had no control or supervision over Jim James or any of the men working for him as to the means or methods used in getting out this wood. In other words, it is claimed that plaintiff was not an employee of the de-

fendant but an employee of Jim James. An "independent contractor" under paragraph 8, section 3 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, p. 113, is a person who renders service other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished.

Jim James did not render services for the defendant as a unit or as a whole. There was no specific and definite piece of work to be done by Jim James, calculated on the basis of a unit or as a whole. His services were to get out fuel wood furnished by defendant and haul this wood to a designated place. The defendant furnished the wood and the truck with which Jim James and his men hauled the wood. The wages or recompense which Jim James received was based on the number of cords cut and hauled. All of the work in cutting and hauling this wood was manual labor. Jim James was in the same position that he would have been had he been acting as foreman, hiring and superintending the men getting out the wood directly for the defendant. The defendant was in no sense purchasing the wood from Jim James, but on the contrary, defendant purchased this wood from other landowners and paid Jim James so much per cord for cutting and hauling its own wood. Under these circumstances, defendant is clearly liable to plaintiff for compensation for an injury received by him while working for Jim James. Carter v. Colfax Lumber & Creosoting Co., 9 La.App. 497, 121 So. 233; Robinson et al. v. Younse Lumber Co., 8 La.App. 160.

The testimony of Mr. Dear himself, the president of defendant corporation, shows this to be the situation. On being asked what arrangements his company had for securing this fuel wood, he said: "Well, we, of course, have to see the people that the land belongs to and we buy the wood from them and then we hire these boys to cut it—these fellows around the country, the farmers or anybody we can get to cut the wood and put it on the track."

Even if we concede that Jim James was an independent contractor, defendant, under the facts and circumstances of this case would not be relieved from paying compensation to a person injured while working for Jim James, for under section 6 of the said Act No. 20 of 1914, as amended by Act No. 85 of 1926, p. 113, it is provided that where a person undertakes to execute any work, which is a part of his business, trade, or occupation, and contracts with any person for the execution of any part of the work so undertaken, the principal shall be liable to pay compensation to an employee or his dependents which such principal would have been liable to pay had such employee been immediately employed by him. In such case the amount of the compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

The defendant is engaged in a hazardous business—the operation of a gravel pit and a tram road in connection therewith. Supplying wood for the locomotives and engines used in hauling gravel to the railroad is a necessary part of that business. Therefore, if defendant contracted part of the work in connection with the operation of this hazardous business to Jim James, then defendant would be liable to a person injured while in the employ of Jim James to the same extent as though such person had been in the immediate employ of defendant itself. The case of Seabury v. Arkansas Natural Gas Corporation, 171 La. 199, 130 So. 1, is not only decisive of this point, but is almost identical with the situation in the present case. See, also, Hollingsworth v. Crossett Lumber Co., 184 La. 6, 165 So. 311.

Defendant is therefore liable to the plaintiff for compensation under either theory of the case presented by the facts. The only remaining question is as to the amount of the compensation. As already stated, plaintiff prayed for and was awarded 65 per cent. of his daily wage of $1.50 for a period not exceeding 400 weeks.

We think that the evidence shows that plaintiff received at least $1.50 per day. But compensation is based on a weekly wage. In the absence of allegations and proof of a special contract of hiring for a shorter week, compensation will be based on the normal week of six days. Ogea v. Horace Williams Co. et al. (La.App.) 165 So. 345. We will accordingly recast the judgment, so as to base the compensation on a weekly wage of $9.

For the reasons assigned, it is ordered that the judgment appealed from be recast so as to read as follows:

It is ordered, adjudged, and decreed that the plaintiff, Tom James, do have and recover compensation against the defendant, Dear & Johnson, Inc., at the rate of $5.85 per week, being 65 per cent. of the weekly wage of $9 for total disability, and for a period not exceeding 400 weeks, beginning October 28, 1935, with legal interest on the past-due payments until paid; that defendant pay all cost of this suit.