## CANNON v. TREMONT LUMBER CO. et al.

### No. 5492.

Court of Appeal of Louisiana. Second Circuit.

Feb. 6, 1939.

Rehearing Denied March 8, 1939.

Writ of Certiorari Denied May 1, 1939.

Julius T. Long, of Shreveport, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, and P. S. Gaharan, Jr., of Jena, for appellee.

432

HAMITER, Judge.

Consideration of this suit, which is one to recover workmen's compensation, was given by us on a prior occasion. At that time we annulled the judgment of the district court insofar as it rejected plaintiff's demands against defendant, Tremont Lumber Company, and remanded the cause for the purpose of taking additional evidence. We felt that the material facts had not been sufficiently developed to permit our pronouncing definitely on the appeal. 175 So. 881.

The judgment rendered in favor of plaintiff and against the other defendant, Ernest E. Terrell, was not before us for review, because the latter prosecuted no appeal therefrom, and was therefore not disturbed.

Further trial was had, pursuant to our order, and thereafter the district court again rejected the demands of plaintiff as against said Tremont Lumber Company.

This second appeal has been prosecuted by plaintiff.

As will be seen from our former opinion, plaintiff was injured on October 3, 1935, while cutting timber from land owned by Mrs. Kate Moseley, known as the Gilmore tract. He was in the employ at the time of defendant Ernest E. Terrell. The Tremont Lumber Company is sought to be held liable under the theory and contention that it had arranged for and purchased such timber and had contracted with Terrell, plaintiff's employer, to cut and haul it; and that therefore subsection 1 of section 6 of Act No. 20 of 1914, as amended, Act No. 85 of 1926, is applicable. The pertinent provisions of the statute are:

"That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him * * *."

The defense is that Terrell was the owner of the timber, he having negotiated for the purchase, and defendant was merely buying logs from him at $9.25 per thousand feet delivered on its premises; and that it had no interest whatever in the timber and no contract with Terrell for the cutting and hauling thereof.

The aforementioned defense is supported by the positive testimony of several witnesses, while the evidence lending assistance to plaintiff's theory is primarily circumstantial.

John Gilmore, who was the representative and agent of his sister, Mrs. Moseley, in the disposition of her timber, testifies that, "I sold this timber to Mr. Terrell and told him he could sell it to who he pleased," and "Terrell said he would leave my money in the office wherever he sold it," and "I sold to Terrell and he sold to Tremont Lumber Company—he could sell to who he pleased."

The sworn testimony of Terrell is to the effect that he agreed to sell the logs to the Tremont Lumber Company for $9.25 per thousand feet delivered at the mill, and of that amount Gilmore would receive $4 per thousand.

O. C. Gunn, who was employed by Terrell to load logs, states that he knew that the timber had been sold to Ernest Terrell, and that "the way I see it the Tremont Lumber Company bought the timber through Ernest Terrell."

It is the testimony of S. M. Abel, the land and timber agent for the Tremont Lumber Company, that he did not buy any timber from John Gilmore and that, "Mr. Terrell came to me and wanted to sell logs and said nothing about selling timber. And I gave him certain specifications of logs both hardwood and pine. I don't know whether he told me at the time whose land it was to come from. I was buying logs from him to deliver at the mill."

Mr. Cannon, plaintiff herein, testifies as follows:

"Q. Mr. Cannon, who employed you to cut timber on this Gilmore job? A. Terrell.

"Q. That is Mr. Ernest E. Terrell? A. Yes sir. * * *

"Q. You had worked for contractors who were cutting logs for the Tremont Lumber Company? A. Yes sir.

"Q. Who owned this timber you were cutting when you were hurt? A. Terrell claimed he bought it from Gilmore.

"Q. When did you find that out? A. Just a hearsay.

"Q. You knew before you started working for Terrell that he had bought this timber from Mr. John Gilmore, didn't you? A. I heard when I was working on the Company timber that he was figuring on some. * * *

"Q. You know as a matter of fact that the cutting of this Gilmore timber was a separate and entirely different job as the cutting of Company timber because you had to make arrangements with Ernest what he would pay on that job? A. He said he was not paying what he paid on the Company land but was going to cut it to 50¢.

"Q. Did you know it was separate job? A. Yes."

In our former opinion, reference was made to a letter written by John Gilmore to Mrs. Moseley wherein he stated:

"I went to the sawmill company today to see about selling your timber. * * * The sawmill company will send you your checks each payday. If you will accept $3.00 per thousand for it, write me a letter saying you will accept so that the company will buy it."

Also, we referred to an affidavit and letter of Mrs. Moseley in which she said that she had received two checks for her timber and both were drawn on and sent to her by the lumber company. The contents of these documents, together with certain circumstances which are mentioned in said opinion and tended to support plaintiff's contention, influenced the remanding of the case for the taking of further testimony. During the second trial it was conclusively shown that Mrs. Moseley had no dealings whatever with any official or employee of the Tremont Lumber Company for the sale of her timber, and that the two checks received by her were sent by her brother, John Gilmore, and were cashier's checks.

The trial judge made the following observation in his written opinion rendered on the first hearing:

"The facts urged by plaintiff to establish the contention that Terrell was in the employ of the Tremont Lumber Company may be considered as being persuasive but these facts must yield to positive evidence that the timber was purchased from Gilmore by Terrell and that cutting the timber into logs was the enterprise of Terrell."

After giving careful consideration to the record as it is presently made up, we have arrived at the same conclusion.

The case of Eaves v. Hillyer-Edwards-Fuller, Inc., La.App., 139 So. 510, 512, is strikingly similar to the instant controversy. The positive testimony therein was to the effect that the compensation claimant's employer bought the timber and sold it in manufactured logs to defendant. There were circumstances, however, which indicated a different transaction, one of which was defendant's payment, at its office and as the logs were delivered, of the stumpage price due to the original timber owner. Regarding this situation the court said:

"We do not think, however, that these circumstances can be held to convert the direct and positive testimony that Johnson bought the timber and sold it in manufactured logs to defendant into and make Johnson an independent contractor, so as to bring the case within the act. Miller v. Brenner Lbr. Co., 8 La.App. 141."

Plaintiff's counsel says in his brief that, "The most similar case in the jurisprudence of the courts of Louisiana to the instant case is that of Carter v. Colfax Lumber & Creosoting Co." The cited cause is reported in 9 La.App. 497, 121 So. 233, 235. It appears to be distinguishable by reason of the existence of a different factual situation. The evidence adduced therein disclosed that Tom Matkins, for whom the injured person worked, had purchased the timber for defendant and was acting as its employee in the logging operations. The court observed:

"Taking the testimony as a whole, construing it altogether, our conclusion is that the defendant lumber company was not purchasing this timber from Tom Matkins at so much per thousand, but that Matkins was an employee of the defendant lumber company to log this particular timber, at so much per thousand feet, and that the defendant company was logging its mill through Matkins, as an employee. As we have already stated, Matkins said that he bought the Airey timber for the defendant company, and it is admitted that the stumpage price was paid to Airey by the defendant. We can see no essential difference between a case of this kind and a case where the stumpage was purchased by

the defendant under a deed and Matkins employed to cut and log it."

It is our opinion that the judgment of the trial court is correct, and it is affirmed.