## WELDON v. PICKERING LUMBER CORPORATION et al.

### No. 1937.

Court of Appeal of Louisiana. First Circuit.

Feb. 15, 1939.

Julius T. Long, of Shreveport, for appellant.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellees.

DORE, Judge.

The petition alleges that the Pickering Lumber Corporation and the Weber-King Manufacturing Company, Inc., entered into an agreement whereby John Gill would cut and haul timber from the lands of the Pickering Lumber Corporation and deliver the timber to the Weber-King Manufacturing Company, Inc., for a certain amount per thousand feet, and that the manufacturing company would deduct the stumpage and pay the same to the lumber company. It is alleged that the arrangement was entered into by these two companies for the purpose of evading the compensation law and to relieve the two companies from liability for injuries sustained by workmen employed by Gill. The plaintiff suffered a broken leg on November 30, 1937, while cutting logs for Gill at 75 cents per thousand feet, and his suit is brought against the two companies and Gill for compensation at the rate of $9.75 per week for 400 weeks, and the additional sum of $250 for medical and nursing services on account of the injury.

Both companies deny that they had any such arrangement as charged by the plaintiff. The lumber company claims that it sold to Thomas A. Craft the timber on certain parts of its cut-over lands, and that Craft was an outright purchaser of the timber and the lumber company retained no control whatever over him in his operations of cutting, handling and selling the timber. The manufacturing company

claims that it purchased the timber from John Gill at a fixed price per thousand feet delivered, and that Gill was not its employee or contractor but was a vendor selling timber to it on certain terms.

No answer was filed by Gill, the third defendant. Judgment was rendered in favor of the Pickering Lumber Corporation and the Weber-King Manufacturing Company, Inc., rejecting the plaintiff's demand as to them; and judgment was rendered by default against John Gill for compensation at the rate of $7.29 per week not exceeding 175 weeks. The plaintiff has appealed with reference to the judgment rendered in favor of the two defendant companies.

The record discloses that in 1931 the Pickering Lumber Company was placed in the hands of a receiver in the Federal Court, and on November 1, 1933, the receiver, with the approval of the court, entered into a contract with Thomas A. Craft for the sale of timber on certain of its lands and on certain terms. Craft, the purchaser, at the first of each month and before cutting any timber, was required to furnish the receiver an estimate of the timber which he proposed to cut during the month and make payment for the amount of the estimate. At the end of each month the purchaser was required to furnish the receiver an itemized statement of the timber cut during the month, and the payments were to be adjusted on the basis of the amount of timber actually cut. It was stipulated in the contract that it would terminate on the termination of the receivership.

According to the record, Craft cut and removed timber under this contract from November, 1933, more or less regularly, and submitted estimates and reports every month with payments to the receiver for the timber cut up to the end of the receivership in March, 1937. Pending the receivership, the lumber company took advantage of the Bankruptcy Act, § 77B, 11 U.S.C.A. § 207, and perfected a reorganization under a new corporation, the present Pickering Lumber Corporation. The new corporation, under an order of the Federal Court, took over all the assets of the Pickering Lumber Company, and Craft continued to cut and remove timber from the lands of the lumber company and make payment therefor in the same manner as he did during the receivership and bankruptcy. It appears that Mr. Barham, who

was an officer in the lumber company before the receivership and had charge of the timber interests of the company, was made assistant receiver, and subsequently receiver, and then trustee in the bankruptcy proceedings, and after the new corporation was formed he was made vice-president and secretary thereof. All the correspondence with Craft relative to his reports and remittances for the timber cut by him under the contract was handled by Barham during the receivership and bankruptcy in his capacity as assistant receiver, receiver or trustee, and after March, 1937, he handled these transactions in the same way but signed his name as vice-president of the new corporation. This is the way the matter stood between the company and Craft in November, 1937, when plaintiff was hurt while cutting timber on land described in the original Craft contract.

There is a letter in the record from Craft to the lumber company dated December 12, 1937, in which it is stated that a check for $213.12 is enclosed to cover 84,849 feet of timber cut, plus an error of $1 on the September statement. This apparently covers payment by Craft for timber cut by him on the lands during November, the month in which the plaintiff was hurt. From the dealings of the parties, it is evident that Craft continued to cut and remit for timber under the original contract after the lumber company took back the property, and there was practically no change in the manner of handling the matter. Both Craft and the lumber company, by their actions, ratified and continued the original contract.

■ John Gill testifies that he contracted with Jim Cavanaugh to cut the timber on this land. Cavanaugh testifies that he was acting for Craft. Gill furnished the men and truck to cut and haul the timber. The timber was sold to the Weber-King Company delivered at its mill at from $9 to $11 per thousand feet, and the stumpage of $3.50 per thousand feet was deducted by the Weber-King Company and remitted to Craft, and the balance was paid to Gill. The Weber-King Company required Gill to furnish an affidavit stating that he was purchasing the timber from Craft and that there were no claims or liens against the timber. There is nothing in the evidence to show that the Weber-King Company had any arrangement whatever with the Pickering Company relative to

the purchase of the timber from it. All that the Weber-King Company did was to purchase the timber from Gill at so much per thousand feet delivered at its mill, retaining the price of the stumpage which was paid to Craft. There is nothing to show that this company was not the bona fide purchaser of the timber, and it cannot be held liable for compensation to an employee of the vendor for an injury received while cutting the timber. Eaves v. Hillyer-Edwards-Fuller, La.App., 139 So. 510; Windham v. Newport Company et al., La.App., 143 So. 538; West v. Martin Lumber Company et al., 7 La.App. 366; Morrison v. Weber-King Manufacturing Company, 6 La.App. 388.

Jim Cavanaugh testified that he contracted with Gill to cut the timber; that he was acting for Craft who had bought the timber from the Pickering Lumber Company; that he wrote a note to Weber-King Company to hold out $3.50 for stumpage and signed Craft's name to the note. At the time of the trial Craft was dead, but his wife testified that she helped him with his papers and correspondence and that the only contract or connection that her husband had with the Pickering Lumber Company was the contract for the purchase of timber. She states that Cavanaugh helped her husband in the timber business after he got sick, and states that her husband received the stumpage on the timber sold by Gill to the Weber-King Company and that he sent $2.50 per thousand feet of this stumpage to the Pickering Company along with the monthly remittance under his contract with that company.

If Craft was having the timber on the Pickering Lumber Corporation land cut and sold as the agent or employee, or as a contractor, of the said corporation, there could be no doubt of its liability to plaintiff for compensation. If that was the real situation, the corporation was itself engaged in logging operations, the cutting and removal of its timber, through its own agents and employees, or through a contractor, and in that case it would be liable to a laborer injured while cutting such timber, whether such laborer was employed by its own agents or by a contractor or subcontractor. Seabury v. Arkansas Gas Corporation, 171 La. 199, 130 So. 1; Carter v. Colfax Lumber Company, 9 La.App. 497, 121 So. 233; Hollingsworth v. Crossett Lumber Co., 184 La. 6, 165 So. 311; James v. Dear & Johnson, Inc., La.App., 172 So. 25.

It is significant that the lumber company never exacted an itemized or detailed statement from Craft as to the amount and kind of timber cut by him each month but accepted his bare statement as to the total feet cut during the month, without checking up on any of Craft's reports. This can be explained, however, by the fact that Mr. Barham had known Craft for a long time and had the utmost confidence in him. It is also significant that Craft looked after the timber holdings for the lumber company and protected the timber from trespassers and was considered in the community as the timber man of the company. But, in view of the fact that Craft had a personal interest in protecting the timber, and since the officers of the company were not residents of the State, it is not strange that Craft assumed a certain amount of authority in looking after the timber owned by the company in Vernon Parish. We do not think the evidence shows that Craft was either the agent of the company or a contractor for the company in cutting and removing the timber; but that he was a bona fide purchaser of it. He made payments for the timber he cut at the price fixed in the contract, and sold the timber to such purchasers and on such terms as he saw fit. The lumber company retained no control or supervision over him as to how or when he cut the timber nor as to whom or at what price he sold it; nor does the evidence show any device or scheme on the part of the lumber company to evade the compensation law.

The case before us is similar to the case of Whitley v. Hillyer-Deutsch-Edwards, Inc., et al., La.App., 142 So. 798, wherein it was held that the contractor or purchaser of timber from the defendant was not its agent so as to make the owner of the timber liable to a laborer of the contractor or purchaser injured while cutting and hauling the timber.

For the reasons stated, we find that the judgment appealed from is correct, and it is therefore affirmed.