## HATCH v. INDUSTRIAL LUMBER CO. et al.
### No. 2180.

Court of Appeal of Louisiana. First Circuit.

Jan. 14, 1941.

Julius T. Long, of Shreveport, for appellant.

Gist & Thornton, of Alexandria, for appellees.

OTT, Judge.

The suit is for compensation for total, permanent disability at the rate of $7.80 per week for a period of 400 weeks, and for damages in the sum of $3,000 on account of the failure of defendants to give plaintiff treatment for his injuries as required of them under the Compensation Law, Act No. 20 of 1914. The defendants are the Industrial Lumber Company and the Calcasieu Sulphate Paper Co., Inc., both sepa-

rate corporations, but the former being the owner of a majority of the stock of the latter, and both corporations being managed by practically the same officers.

Plaintiff alleges that his right leg was fractured and his left knee was seriously injured when a truck in which he was riding to his work on July 12, 1938, ran into a ditch, throwing him against a pole and causing these injuries which he alleges have rendered him totally and permanently disabled from work; that at the time he was injured he was working under one Reese Brown in cutting and sawing pulpwood for the defendants; that said Reese Brown was an employee, agent or contractor of the defendants in cutting and hauling this paper wood; that the paper wood was being cut from lands of one Turner through an arrangement made by the logging superintendent of the defendant companies whereby the said superintendent agreed with the owner of the timber that the defendants would hold out the stumpage of 50 cents per cord, and informed the owner that he (the superintendent) would send one of the agents of the companies to cut and haul the said timber; that said superintendent sent said Brown to arrange to cut and remove said timber. Plaintiff then alleges, in effect, that the defendants were the real purchasers of the timber from Turner and that Brown was merely the agent, employee or contractor of the defendant companies, but that the defendants, in order to avoid payment of compensation to workmen injured in cutting and hauling said timber, were attempting to make it appear that Brown bought the timber from Turner, manufactured it into paper wood and sold it to the defendants at a certain price per cord.

The claim for damages is based on allegations to the effect that the defendant companies operate a hospital for the treatment of their employees, and that plaintiff was taken to the hospital immediately after his injury, and was first received as a patient in the hospital where X-rays were made of his legs and first aid treatment was given him; that he was first led to believe by the physicians in said hospital that he would be given proper treatment, but that after several hours, he was advised that he was not entitled to treatment at the hospital, and he was then forced to go to the Charity Hospital in Shreveport, all of which caused great pain and suffering, mental anguish and sorrow, and resulted in unnecessary delay in the treatment of his injuries.

The substance of defendants' answer (and the matter on which the main issues in the case depend) is that Brown purchased the timber from Turner and manufactured the timber into pulpwood and this wood was sold to the Industrial Lumber Company at a fixed price per cord, delivered at the said lumber company's tracks; that Brown was not an agent, employee or contractor of either defendant, but that his relation to the lumber company was only that of vendor of the paper wood.

The defendants denied any liability for damages on account of the alleged refusal to give plaintiff treatment at the sanitarium, and denied that the defendant companies operated said sanitarium, but averred that it is operated by a fund arising from contributions made by the employees of these two defendants and other companies, and that the sanitarium is managed by a committee from the employees of these various companies.

The trial judge rejected the demands of the plaintiff both for compensation and for damages. The plaintiff has appealed.

Quite a lot of the record is taken up in an effort to show that the two defendant corporations are to all intents and purposes one corporation, the Industrial Lumber Company being the owning and controlling corporation and the other being merely a servient and subsidiary corporation, rendering both liable in solido to the plaintiff for compensation and for damages. In view of the conclusion we have reached, it is not necessary for us to pass on this question. For the purposes of our discussion, we will consider the Industrial Lumber Company as the principal defendant and refer to it as the defendant.

■ The sole question presented in the case is whether or not the defendant in good faith purchased from Brown the pulpwood at a fixed price per cord delivered at its tracks. If the relation between the defendant and Brown was that of purchaser and vendor of the wood there is no liability on the part of the former to an employee of the latter for compensation on account of an injury received by such employee while cutting the wood. This principle is so well settled by the courts of this state that no citation of authority is necessary. However, in order that our reports may show a convenient list of the cases support-

ing this principle, we list here a few of them that we consider most appropriate and illustrative: West v. Martin Lumber Co. et al., 7 La.App. 366; Eaves v. Hillyer-Edwards-Fuller, Inc., La.App., 139 So. 510; Whitley v. Hillyer-Deutsch-Edwards, Inc. et al., La.App., 142 So. 798; Brasher v. Industrial Lumber Co., Inc. et al., La.App., 165 So. 524; Anthony v. Natalbany Lumber Co., Ltd., La.App., 187 So. 288 and Cannon v. Tremont Lumber Co. et al., La. App., 188 So. 431.

■ But if the employer of the injured employee was merely the agent or contractor of the defendant lumber company, the latter would be liable for compensation. Carter v. Colfax Lumber & Creosoting Co. et al., 9 La.App. 497, 121 So. 233; Hollingsworth v. Crossett Lumber Co., 184 La. 6, 165 So. 311. It is under this rule that plaintiff hopes to bring his right to recover compensation by showing that Reese Brown was nothing more than the agent or contractor of the defendant; that the latter was the real purchaser of the timber from Turner, and Brown was its agent or contractor in cutting and hauling the wood; that the entire arrangement was merely a subterfuge or device on the part of the defendant to avoid liability for compensation, contrary to Section 36 of Act 20 of 1914, which provides that no contract, rule, regulation or device whatsoever shall operate to relieve the employer from liability for payment of compensation under the act.

The evidence shows that Turner offered to sell his timber to the defendant lumber company for 75 cents per cord; that the company declined to pay that price for the wood, but the logging superintendent of the defendant told Turner that he would send a man to see him who might buy his timber at that price; that the superintendent told Brown of this timber and told him if he (Brown) made a deal with Turner for the timber, the lumber company would give Brown $3 per cord for wood cut from the timber and loaded on cars on its railroad track. Brown accordingly made the deal with Turner, and arrangements were made with the defendant by which it was to hold out 50 cents per cord for stumpage and pay it direct to Turner, and Brown paid the difference of 25 cents per cord direct to Turner.

Brown employed the plaintiff to cut the wood and paid him weekly on the basis of the number of cords cut. Brown provided the trucks for hauling the wood, and also provided transportation for plaintiff to and from his work. The logging superintendent gave Brown instructions as to the sizes and kind of wood to be cut, but he had nothing to do with supervising the cutting and hauling of the wood. Brown owned two trucks and had for several years sold logs and wood to the defendant and had hauled some lumber and gravel for the defendant and was at the same time that he was cutting and hauling this pulpwood from the Turner tract also hauling under contract with the defendant fuel wood for its locomotives. The defendant never paid over 50 cents per cord for stumpage when it bought pulpwood from other parties and had it cut itself, and for that reason it would not hold out more than 50 cents per cord for Turner on his stumpage so as not to make it appear, as the logging superintendent frankly admitted, that the company would pay more than 50 cents per cord stumpage.

Brown frankly admitted that before he made the deal with Turner, the defendant had agreed to take the wood and pay Brown $3 per cord loaded on cars and that there was no one else to whom he could have sold the wood to advantage; that he intended to and did sell and deliver it all to the defendant company; that the logging superintendent of the lumber company told him that he might make the deal with Turner, and that he knew at the time that the lumber company would hold out the 50 cents per cord for stumpage.

Because of the facts and circumstances related above, learned counsel for plaintiff would have us conclude that there was no bona fide sale of this pulpwood by Brown to the defendant, but that the former was merely an interposed party disguised as a vendor, when in fact he was in reality nothing more than the agent or contractor of the defendant company; that the defendant arranged for the purchase of the timber and financed Brown in cutting and hauling it, and that the difference in the stumpage price paid Turner and the price paid Brown was nothing more than the allowance made to Brown for cutting, hauling and loading the wood.

This same contention was made by learned counsel in several other cases presenting rather similar circumstances, particularly in the cases of Eaves v. Hillyer-Edwards-Fuller, Inc., supra; Whitley v. Hillyer-Deutsch-Edwards, Inc. et al., supra; and Cannon v. Tremont Lumber Co.

et al., supra. The Eaves case is strikingly similar to this case. It is apparent from reading that case that our brethren of the Second Circuit considered it a close case as the facts were given in considerable detail and the court rendered two separate and different opinions in the case. See 135 So. 720 and 139 So. 510.

There are a few circumstances which make this case a little more favorable to plaintiff than the Eaves case was to the plaintiff in that case; that is the fact that the defendant's logging superintendent sent Brown to Turner to buy the timber and agreed with Brown to take the wood at $3 per cord if he made a deal with Turner, and the further fact that Brown was obligated to sell the wood to the defendant and could not have sold it to any one else. We cannot escape the impression also that the logging superintendent was anxious for his company to get the pulpwood from this land, but the company did not want to go on record as paying more than 50 cents per cord for stumpage.

While these facts and circumstances do lend some support to plaintiff's contention, yet we are not justified in ignoring the direct testimony to the effect that the transaction was a bona fide one whereby the defendant was in good faith buying this pulpwood from Brown and there was no intention to evade responsibility under the Compensation Law. And we might add that, if the facts and circumstances did justify us in concluding that the arrangement was for the purpose of avoiding payment of compensation, we would have no hesitancy in so holding, even though such a holding might require us to ignore the apparent agreement in order to determine its real purpose and effect.

It is argued that if such arrangements are permitted to stand, the result will be that in many cases an irresponsible and impecunious contractor can be used as a front under the guise of a seller of timber or other commodity and thus avoid payment of compensation to an injured employee of such contractor by depriving him of any means of recovery. This argument is not without justification, but unless the facts in each case are such as to show that the transaction was not a bona fide sale and purchase of such timber or other commodity, the courts are powerless to change the law so as to hold the purchaser liable for compensation to an individual who is an injured employee of the seller. If such liability is to be imposed, it is a matter that addresses itself to the legislative branch of the government.

As plaintiff's claim for damages is based on the alleged failure of defendant to furnish him medical treatment as required under the Compensation Law, we understand that his counsel concedes that if plaintiff is not entitled to compensation from the defendant, his claim for damages on account of a failure to furnish him proper medical treatment likewise falls. Consequently, the conclusion we have reached on the claim for compensation renders it unnecessary for us to consider further the claim for damages.

For the reasons assigned, the judgment appealed from is hereby affirmed.