On the theory that his employer Robert Woods, was an employee of J.W. Jeffries Lumber Company, a co-partnership, hereinafter referred to as the company, plaintiff seeks to hold said company and its individual members liable to him for workmen's compensation on account of serious injuries sustained by him while performing the duties of his employment with Woods. In the alternative, he sues for damages as in tort. He appealed from judgment rejecting his demands and dismissing his suit.
The facts of the case, in the main, are not controverted. The company owns and operates a sawmill in the southern part of the City of Shreveport, Louisiana, and to successfully carry on its business of manfacturing lumber, purchases logs from various and sundry persons, delivered at its mill and otherwise. In keeping with the practice generally engaged in by sawmill companies not owning a large quantity of stumpage, it advances money to truck operators and loggers to enable them to buy timber and deliver saw logs to it, one of whom is A.P. Gilbert, who lives at Minden, Louisiana.
In August, 1940, Gilbert closed a deal with W.H. Hortman for the stumpage on a tract of several hundred acres in Webster Parish, at the price of $250. He was without the needed cash to close the deal, and, as he had often done in the past, approached the company's officers for assistance. They consented to advance him the money. Gilbert and Hortman went to the office of R.D. Watkins, attorney in Minden, Louisiana, to have transfer drawn. Hortman was unwilling, as a business *Page 88 
proposition, to deliver the deed for the timber before receiving the price in cash. Mr. Watkins called the company's office by telephone and discussed the matter with Mr. C.A. Wilkinson, a co-partner, who suggested that the deed be sent directly to the company and draft for the price drawn on it be handled through banking channels. However, Mr. Hortman was unwilling to close on this basis and it was finally decided to attach the deed to a draft on the company, to be delivered when the draft was paid. The company was named in the deed as purchaser. The draft in due course was presented and paid and the deed delivered to the company, but was lost or misplaced before being registered. The draft was charged to Gilbert's account.
Immediately after the trade was closed, Gilbert began to convert the timber into saw logs and to deliver them by truck to the company's mill. The price of the delivered logs was $13 per thousand feet, of which amount $8 was paid to Gilbert and $5 credited against the purchase price of the timber. Gilbert authorized Woods to cut and haul some of the timber and he was paid the same price, less $5 per thousand feet, which was also credited against the purchase price. Woods hired plaintiff to operate his truck at $3 per day. He was injured on the third day after employment while unloading logs at the company's mill.
It does not appear that Gilbert benefitted from Woods' operations save to receive credit for the stumpage value. He was in a hurry to remove all the timber before wet weather set in.
Plaintiff contends that the timber belonged to the company and argues that Gilbert and Woods were, as to it, either sub-contractors or employees and, therefore, under the provisions of the Workmen's Compensation Law the company is responsible to him for the compensation for which sued. The following part of the Workmen's Compensation Law, Paragraph 1, Section 6, Act No. 20 of 1914, as amended by Act No. 85 of 1926, is relied upon, to-wit: "* * * That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him * * *."
The company's position is that it did not in reality own the timber, but only financed Gilbert to acquire it and that he at all times was its owner; that it exercised no control or supervision over Gilbert or Woods in their logging operations and paid for logs only as and when delivered; that the relations between it, on one side, and they, on the other, was that of purchaser and seller. If this position is well founded, the Workmen's Compensation Law has no application. Hatch v. Industrial Lumber Company et al., La.App., 199 So. 587, and cases therein cited.
The quoted portion of the Workmen's Compensation Law provides plaintiff the protection he seeks if the facts of the case are as by him contended. But we are of the opinion the facts and the law are against him.
Gilbert had been selling the company logs for several years. It had often advanced him cash to purchase timber. The advances were invariably repaid in the same manner as was done in the present instance. In some instances no deed was taken either to Gilbert or the company. The company's officials appeared to have had much confidence in his ability as a successful logger and in his personal integrity. The trade with Hortman was entirely conducted by Gilbert and the timber at no time prior to being cut was seen or cruised by any of the company's officials or employees. The company's connection with the logs began after delivery at its mill and were scaled by it. When this was done, the logs were unloaded by its employees and the price paid.
The lower court has favored us with a well-written opinion wherein cogent reasons are given for its ruling on the various questions involved. We quote with approval the following portion of said reasons, to-wit:
"According to the testimony of Mr. Hortman he was informed by Gilbert that the timber was being purchased for the Jeffries Lumber Company. This purchase was confirmed by a telephone conversation between Mr. Hortman's attorney and Carl A. Wilkinson of the Jeffries Lumber Company. *Page 89 
Mr. Hortman was not concerned with whom the deed was made to, but his principal objective was to be assured that the money would be forthcoming. Pursuant to this conversation the deed was prepared and attached to a draft drawn on the J.W. Jeffries Lumber Company, which was paid by them.
"Mr. Carl A. Wilkinson testified that he had had no arrangement with Gilbert to purchase the timber for them, but that they merely loaned the funds to Gilbert who had sold timber to them prior to this time. According to the testimony of the officials of this company they had never been on this tract of land and knew nothing of the timber until called with reference to the purchase by Mr. Hortman's attorney. In other words, it is their contention that they loaned the money to Gilbert to make this purchase and that while the title was taken in the name of the Jeffries Lumber Company with their consent, it was never considered as their timber. In this transaction the price and all conditions were agreed to between Mr. Hortman and Mr. Gilbert, without any knowledge or information on the part of the defendants.
"When all of the facts of this case are considered in connection with the testimony of Mr. Hortman, his attorney and Mr. Wilkinson as to the conversations by telephone it is our conclusion that all the Jeffries Lumber Company intended was that they would back A.P. Gilbert by payment of the price in his purchase of the timber in question. Gilbert had had similar business relations with the defendant lumber company, but there is no showing that he has ever occupied the position of an employee or agent.
"It is shown by the testimony in this case, and the many cases cited, that it is customary for lumber companies to loan money to various logging contractors in order for them to buy timber for sale to the various mills. In some instances this arrangement is such that the lumber company merely guarantees the price to the vendor and retains the stumpage price from the amount paid to the logging contractor and forwards that amount to the vendor of the timber.
"The fact that title to the timber is placed in the name of the lumber company does not change the relation of the parties if in truth and in fact the lumber company is not the real owner of the timber in question. In such cases the result must be determined after a consideration of all the facts and circumstances leading up to the purchase and the manner in which the timber is handled and controlled by the parties. In the case now before the court, it is our conclusion that the relation between A.P. Gilbert and the defendants can only be considered as vendor and vendee.
"In addition to the various facts proven on the trial of this case we certainly were not led to believe that the defendants were making an effort to evade the provisions of the Workmen's Compensation Law of this state.
"It was shown that some of the timber off of this land was sold and delivered to another lumber company by A.P. Gilbert, and that in this transaction the defendant did not participate either in the arrangements or the purchase price. We have reference to the sale of timber to the Holman Lumber Company by A.P. Gilbert.
"Some months after the injury to the plaintiff, A.P. Gilbert sold the gum and oak timber to the T.J. Moss Tie Company. The deed filed in evidence recites that Gilbert received the consideration of $200.00 for this sale and while the deed is signed by the Jeffries Lumber Company the instrument was not executed until long after the sale by Gilbert. According to Mr. Wilkinson he did not know of the transaction until requested by Gilbert to execute the deed which was his only relation to the matter. This deed was secured by Gilbert at the request of his vendee, the T.J. Moss Tie Company.
"In their deal with Gilbert it is testified by the representatives of the defendant company that they charged him with interest and carrying charges for the advances of $250.00. It is also testified that Gilbert was charged in their final settlement with the severance taxes due the State of Louisiana.
"It seems to us that if the defendant was in bad faith in these transactions and their purpose was to evade the compensation laws of this State that immediately after their advance to Gilbert had been repaid, which was on September 28, 1940, they would have reconveyed the timber to Gilbert, or to say the least, this would have been done after the injury suffered by the plaintiff. To the contrary, their indifference to the deed being in their name is shown by the fact that it was never recorded, and could not be found by the representatives of the company when requested to do so. *Page 90 
"The facts in this case, and the conclusion we have reached, make the remarks of Judge Ott in the case of Hatch v. Industrial Lumber Company, supra [199 So. 590], appropriate to this decision:
"`While these facts and circumstances do lend some support to plaintiff's contention, yet we are not justified in ignoring the direct testimony to the effect that the transaction was a bona fide one whereby the defendant was in good faith buying this pulp-wood from Brown and there was no intention to evade responsibility under the Compensation Law. And we might add that, if the facts and circumstances did justify us in concluding that the arrangement was for the purpose of avoiding payment of compensation, we would have no hesitancy in so holding, even though such a holding might require us to ignore the apparent agreement in order to determine its real purpose and effect.
"`It is argued that if such arrangements are permitted to stand, the result will be that in many cases an irresponsible and impecunious contractor can be used as a front under the guise of a seller of timber or other commodity and thus avoid payment of compensation to an injured employee of such contractor by depriving him of any means of recovery. This argument is not without justification, but unless the facts in each case are such as to show that the transaction was not a bona fide sale and purchase of such timber or other commodity, the courts are powerless to change the law so as to hold the purchaser liable for compensation to an individual who is an injured employee of the seller. If such liability is to be imposed, it is a matter that addresses itself to the legislative branch of the government.'
"Counsel for plaintiff relies very strongly on the case of Carter v. Colfax Lumber Creosoting Company, supra [9 La.App. 497, 121 So. 233], but our conclusion as to the established facts in this case makes it unnecessary to lengthen this opinion by distinguishing that case. The case was distinguished for the same grounds we could give in Eaves v. Hillyer-Edwards-Fuller, Inc., 139 So. [510], 511, and Cannon v. Tremont Lumber Company, 188 So. 431."
Summarizing, it is well to point out that in addition to the testimony of Gilbert and Wilkinson to the effect that the company at no time owned the timber purchased from Hortman, the following undisputed facts should put at rest any doubt or issue on the subject, towit:
The company charged Gilbert with interest and carrying charges on the $250 paid for the timber, and also deducted from price of logs delivered by him severance taxes due the state and paid the same for his account to the state. Under the law the owner of timber cut owes this tax. Gilbert sold and delivered part of the timber to another lumber company and did not account and was not required to account to defendant for the proceeds thereof; and, finally, he sold the gum and oak timber to another company and received individually the price thereof. The company executed to this purchaser, at Gilbert's request, a conveyance of the timber in which it is stated that the price of $200 was paid directly to Gilbert. All of these acts and facts are wholly inconsistent with nonownership. They are perfectly compatible, however, with ownership.
Plaintiff has failed to prove that he was hurt because of the negligence of an employee of the defendant. In brief, his attorneys admit this but argue that the res ipsa rule is applicable, and, this being true, an inference of negligence arose from the fact of accident and consequent injury. This position is not well taken. Plaintiff is not in ignorance as to how and why he was injured. He is in a better position to know this fact than is the company or its officers or agents. We are certain the log, after being released from the chains holding the batch of logs on the truck, in some manner or for some reason rolled from its position and fell upon plaintiff. The testimony does not satisfy us that any employee of the company was on or about the truck at the time.
Plaintiff was a patient for many weeks in the Shreveport Charity Hospital. Its Board of Directors intervened in the suit and sued him and defendant for $444.50, which includes value of services rendered him and other expenses incurred in treating him while a patient. Of course, the rejecting of plaintiff's demand leaves the intervention without foundation. No appearance on behalf of the hospital was made in this court nor were briefs filed.
It is our opinion the judgment appealed from is well sustained by the evidence in the case and the law applicable thereto, and for these reasons it is hereby affirmed, with costs.
DREW and HAMITER, JJ., concur. *Page 91