AYRES, Judge.
This is a workmen’s compensation suit instituted by- plaintiff against defendant as the compensation insurer of T. B. Godfrey, wherein plaintiff prays for compensation at the maximum statutory rate and as for total and permanent disability, for accidental injuries sustained March 9, 1955, together with 12 percent thereof additional as penalties, and a reasonable attorney’s fee, plus the maximum allowance for hospital and medical expenses.
From a judgment awarding plaintiff compensation at the weekly rate of $27.30 and as for total and permanent disability an'd $179.50 for medical and hospital expenses, defendant moved for and was-.granted orders of suspensive and devolutive appeals.
For defendant’s failure to comply with Code of Practice, Art. 575 with respect to suspensive appeals in not filing an appeal bond within the ten days' provided for therein, plaintiff has in this court moved for a dismissal of that appeal. Plaintiff, however, has answered the devolutive appeal and prayed that the judgment be amended by the allowance of statutory penalties and attorney’s fees for defendant’s arbitrary and capricious refusal to pay compensation.
With respect to the motion to dismiss the suspensive appeal, the facts are that the judgment appealed was signed and filed November 16, 1955, whereas the appeal bond was not filed until December 3, 1955, or after the expiration of the time provided therefor, so as to- perfect a sus-pensive appeal. While the bond was not timely filed so as to suspend the execution of the judgment of the trial court, it was filed within the year during which devolu-tive appeals may be granted and perfected. Therefore, under the well-established jurisprudence of this State, the appeal will not be dismissed but will be entertained as a devolutive appeal. Ramizest v. Ramizest, 226 La. 973, 77 So.2d 733; Probst v. Di Giovanni, 226 La. 625, 76 So.2d 909, 910; Graziani v. Elder & Walters Equipment Co., Inc., 208 La. 80, 22 So.2d 841; Diamond Match Co. v. Moran, La.App., 82 So.2d 784.
Therefore, the appeal is dismissed as sus-pensive but maintained as devolutive.
Plaintiff contends that he was either an employee of Godfrey, or, in the alternative, an employee of a subcontractor of Godfrey, whereas -defendant’s position is that plaintiff was neither an employee of Godfrey nor of any agent, contractor or subcontractor of his, but that plaintiff was-an employee of one Lemon Maxey, an alleged independent contractor with whom a contract had been entered into by one E. E. Weldon for the loading into railroads *633 cars of pulpwood then situated on the railroad yards at Florien, Louisiana, and that the relationship between Weldon and Godfrey was that of vendor and vendee of the wood to be loaded....
The defendant concedes that plaintiff sustained accidental injuries in the loading of the aforesaid wood and within the course and scope of his employment, which entitled him to workmen’s compensation, and that such injuries are of a total and permanent nature.
Godfrey explained in detail his usual or general method of operation. In the course of his business he sometimes bought pulpwood delivered on railroad cars and at other times produced the pulpwood from standing timber purchased by him. He advanced large sums of money to his producers to finance them in their operations. Godfrey assigned quotas to his producers, such as Weldon, from the allowance of production assigned to him by the mill. Godfrey paid the severance tax and compensation insurance for the production of all wood handled by him. These charges were passed on to the initial producer.
However, with respect to the particular wood which plaintiff was handling at the time, he was injured, Godfrey was pursuing another method of operation. Both Weldon and Godfrey explained that in December, 1954, Godfrey had no orders from the mill for wood and, therefore, wood could not be loaded onto the railroad cars and shipped. Wherefore, Godfrey instructed Weldon to purchase certain wood for him and unload it on the ground and hold it subject to Godfrey’s orders. Godfrey gave Weldon instructions to load the wood, supervised its loading, and while it was being loaded plaintiff was injured. In this connection Godfrey testified:
“Q. Did you advance Mr. Weldon the money for the loading of the wood ? A. We didn’t consider it in the nature of an advancement. The arrangement I had with Mr. Weldon was, that he bought this wood on my authority, and I told him, specifically, that I would reimburse him for any amounts that he spent for this wood to be put on the ground; and later, when the wood was scaled, I would give him an increased amount to offset the cost of reloading it, which was to be reloaded at my direction.
“Q.. In other words, Mr. Weldon bought the wood? A. That’s correct.
“Q. . In Weldon’? name? A. I don’t, technically — I don’t know whether he bought it in his name or mine. He actually paid for it with his check, and I reimbursed him with mine.
' “Q. Would you say that you bought 'the wood from Weldon? A. I would say Mr. Weldon bought it for me.
“Q. Bought it for you, as your agent? A. I would think so.
“Q. That’s just your conclusion? A. That’s my — that’s the way I feel about it.”
Therefore, it is seen that, according to Godfrey’s own testimony, the wood belonged to him, and that in purchasing it Weldon acted for him as his agent. Weldon likewise* testified that the wood belonged to Godfrey and that he was acting as Godfrey’s agent *in having the wood loaded for shipment. Plaintiff and Lemon Maxey also testified that it was their understanding that the wood was the property of Godfrey and that it was being loaded for him. After carefully checking his books, Weldon testified that at the time the wood was being loaded, Godfrey had paid him in full for the amount expended for the wood, including $1.25 per unit as compensation for his services, and that all that remained to be paid him was the reimbursement of the expense of the loading. Godfrey admitted that he had paid for the wood entirely other ■ than the loading expense. Godfrey gave Weldon detailed instructions as to the loading of this wood and, in addition, the loading was supervised by a Mr. Dewitt, one of Godfrey’s regular employees. Weldon, acting as Godfrey’s agent and for and on his behalf, employed Lemon Maxey to load, at least, a portion of this wood. Maxey, in turn, employed *634 plaintiff and others to assist-.him ,in this work.
From the foregoing it could only be concluded that Weldon was acting as Godfrey’s agent, even in the acquisition by Godfrey of this wood, but, even though it could be said that a relationship of vendor and ven-dee originally existed between Weldon and Godfrey when this wood was acquired and delivered to the railroad yard, this relationship had definitely been terminated as to this particular wood long before plaintiff was employed to assist in its loading. It has, therefore, been established to our satisfaction and by a great preponderance of the evidence that Weldon, in the loading of this wood, was acting as Godfrey’s agent and in that capacity contracted with Lemon Maxey to perform services in connection therewith, who likewise employed plaintiff to assist therein.
For the foregoing reasons, the conclusion is inescapable from a review of the record in this case that as to the wood being loaded by plaintiff at the time of the accident and his injury, Weldon acted as the agent and servant of Godfrey in contracting with Maxey to load said wood on the railroad cars and that plaintiff was an employee of Maxey; that there was, therefore, no relationship of vendor and vendee between Godfrey and Weldon, but that plaintiff was an employee of a contractor of Godfrey, who had undertaken the performance of an essential part of Godfrey’s operations in connection with Godfrey’s business and occupation, ahout which, as logging operations, there could be no doubt of its hazardous character, as defined in the Compensation Statute.
Where any person undertakes to execute any work, which is a part of his hazardous trade, business or occupation, or which he has contracted to perform, and contracts with any person for the execution of the whole or any part of the work undertaken by such principal, the principal is liable to any employee engaged in the exe-cutipn of the work, or to his dependent, for compensation which he would have been liable to pay if the employee had been directly employed by him. LSA-R.S. 23:-1061. Under this section, the jurisprudence is firmly settled'that a'principal employing a contractor, subcontractor or independent contractor, is liable for compensation to an injured employee of such contractor, subcontractor or independent contractor, direct contractual relations between the employee and the principal being unnecessary. Hollingsworth v. Crossett Lumber Co., 184 La. 6, 165 So. 311; Carter v. Colfax Lumber & Creosoting Co., 9 La.App. 497, 121 So. 233; Seabury v. Arkansas Natural Gas Corp., 171 La. 199, 130 So. 1; Helton v. Tall Timber Lumber Co. of Louisiana, Inc., 148 La. 180, 86 So. 729; Lindsey v. White, La.App., 22 So.2d 689; Owers v. Louisiana Long Leaf Lumber Co., La.App., 14 So.2d 275; Lyons v. Wireless, La.App., 2 So.2d 719; Hatch v. Industrial Lumber Co., La.App., 199 So. 587; McKay v. Crowell & Spencer Lumber Co., La.App., 189 So. 508.
See, also, 10 La.L.Rev. 25.
The authorities cited by defendant, on the theory that plaintiff was an independent contractor and as such was excluded from the benefits of the Compensation Act, are inapplicable to the facts of this case. Plaintiff was not an independent contractor. The entire work undertaken by him required the exercise on his part of manual labor. Should his relationship in all other respects fulfill the requisites of an independent contractor, he is nevertheless included within the coverage of the statute, LSA-R.S.' 23:1021(6), as amended by Act 179 of 1948, which recites as to independent contractors that they “are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.” (Emphasis supplied.) The authorities cited antedate this amendment.
The judgment awarding plaintiff compensation is, in our opinion, correct and should be affirmed.
 Plaintiff urges that, pursuant to the provisions of LSA-R.S. 22:658, we *635 should assess the defendant with the statutory damages therein prescribed .of 12 percent of the total amount of the compensation awarded, together with a reasonable attorney’s fee, .on the ground that defendant’s failure to pay compensation was arbitrary, capricious and without probable cause. Defendant counters with the contention that its actions were in good faith. The statute is a penal statute and as such is subject to strict construction. The defense in this action that a relationship of vendor and vendee existed between plaintiff’s immediate employer and defendant’s assured, Godfrey, was seriously presented and urged by defendant. We deem that defendant was in good faith and that it was not wholly without justification in presenting the issue to the court for determination. We are of the opinion that the judgment of the trial court, in rejecting plaintiff’s demands as to this item, was likewise correct.
For the reasons assigned, the judgment appealed is affirmed at appellant’s costs.
Affirmed.