No. 3099

Second Circuit

---

LANGLEY v. WIDOW AND HEIRS OF McDONALD, ET AL.

---

(December 21, 1927. Opinion and Decree.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Master and Servant —Par. 154, 156.**

Although the Workmen's Compensation Act No. 20 of 1914 as amended should be liberally construed in favor of an employee, nevertheless where employee is engaged in a hazardous occupation which is incidental to the consummation by his employer of a contract of sale of raw material to a mill, the relation of principal and contractor not being existent, the employee cannot recover compensation from the mill. (Refer to Section 3, Subsection 8, of Act No. 85 of 1926.)

Appeal from the Third Judicial District Court of Louisiana, Parish of Lincoln. Hon. S. D. Pearce, Judge.

Action by Pirdy Langley against Widow and Heirs of E. N. McDonald et al.

There was judgment for plaintiff and defendants appealed.

Judgment reversed.

J. Rush Wimberly; George M. Wallace, of Arcadia, attorneys for plaintiff, appellee.

J. W. Elder, of Ruston; Charles B. Roberts, of Minden, attorneys for defendants, appellants.

WEBB, J. This suit was brought against Adams Brothers, a partnership composed of J. T. Adams and J. E. Adams, and the heirs of E. N. McDonald to recover judgment against them in solido for compensation under the Employers' Liability Act. It was abandoned as against the heirs of E. N. McDonald and prosecuted only as against Adams Brothers and the individual members of the partnership, against whom judgment was rendered in favor of the plaintiff, from which defendants appeal, and plaintiff has answered the appeal, praying that the judgment be amended in his favor.

The evidence shows that McDonald was engaged in the business of "logging" and plaintiff was employed by him and was injured by an accident arising out of and in the course of his employment, and as between plaintiff and McDonald it appears plaintiff would have had the right to recover.

There was not any evidence introduced to show the relation between the operations of McDonald and Adams Brothers further than a written contract entered into by and between J. E. and J. T. Adams and McDonald and Goodwin, under which Adams Brothers, in their answer, allege that the logging operations of McDonald were conducted.

The contract, which was annexed to defendants' answer, and offered in evidence, reads in part as follows:

"Be it remembered that on this the 30th day of January, 1926, that the following contract and agreement is made and entered into by and between J. E. Adams, a resident of Webster parish, and J. T. Adams, a resident of Bienville parish, hereinafter referred to as the parties of the first part, and E. N. McDonald and Glenn Goodwin, both residents of Lincoln parish, and hereinafter referred to as the parties of the second part, witnesseth:

"That, whereas the parties of the second part are the owners of from ten to twelve million feet of merchantable pine, oak and gum timber now standing, growing and being, surrounding and within a logging distance of saw and planer mill some six miles west of Vienna, Louisiana, now, therefore, the said parties, for the considerations hereinafter set out, have agreed to lease to the said parties of the first part, their heirs and assigns, the said saw mill, planer mill and equipment for both, such as tramways, kilns, dolleys, and saw and planer mill equipment, necessary for the sawing of logs and planing thereof and as now constituted, together with twelve houses for labor.

"That as a consideration of the above, the parties of the first part agree to purchase from the parties of the second part, or their assigns, all of the pine, oak and gum logs delivered to them (as hereinafter stipulated) and to pay therefor the sum of twelve dollars per thousand feet log measure (by legal scale). The said logs are to be paid for as scaled on skidway on the fifth and twentieth of each month.

\* \* \* \*

"It is agreed that the gum timber is to be fourteen inches and up, the oak to be twelve inches and up, and the pine to be eight inches and up. That all logs are to be cut under orders of parties of the first part insofar as lengths are concerned, insofar as practicable as to the timber being then cut.

"It is agreed that the parties of the second part will deliver on an average four hundred thousand feet, log scale, per month during the term of this contract. It is agreed that parties of the second part will deliver to parties of first part hereunder and parties of the first part will accept twelve million feet of timber as now owned by parties of second part and that parties of first part will accept additional timber that may be hereafter purchased by parties of second part during the life of this contract and within two miles of the mill seat and not over twenty-five per cent. 'old field' timber and that they will accept all other timber within five miles of mill seat that is agreeable to them."

\* \* \* \*

The contract between J. E. & J. T. Adams and McDonald & Goodwin does not show the connection between the operations of McDonald and the obligations assumed by McDonald & Goodwin; however, it appears to be conceded that McDonald was acting for himself and Goodwin in that counsel present the case from that point of view, and there was not any evidence offered tending to show to the contrary except that it was shown that McDonald had in his operations hauled some logs on his own account from which he had made crossties, but it does not appear that plaintiff hauled any of such logs, and he testifies that his employment was confined to hauling logs to the mill operated by J. E. & J. T. Adams under the name of Adams Brothers, and we shall consider the cause from the point of view of counsel, assuming that McDonald, in his operations, was acting for himself and Goodwin.

From this view, plaintiff contends that the Adamses were the principals of McDonald within the meaning of Section 6 of the statute which reads in part as follows:

"That where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation, or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any

part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then, in the application of this act, reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed."

And he also argues that there was an executory agreement to form a partnership between J. E. Adams and J. T. Adams and McDonald & Goodwin to operate a sawmill which was consummated by the parties acting under the agreement; while the defendants contend that the operations of McDonald were merely incidental to the obligation of McDonald & Goodwin, as sellers or vendors of movable property, but if it should be held that the operations of McDonald had any legal relation, within the meaning of the statute, to the operations of the sawmill by Adams Brothers, that McDonald was an independent contractor as defined by Clause 8, Section 3, which reads:

"A person rendering service for another in any of the trades, businesses or occupations covered by this act (other than as independent contractor, which is expressly excluded hereunder) is presumed to be an employee under this act. The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service for a specified result, either as a unit or a whole, under the control of his principal as to the results of his work only, and not as to the means by which such result is accomplished."

Considering the argument that Adams Brothers or J. E. & J. T. Adams, entered into a contract with McDonald & Goodwin to form a partnership to operate a sawmill, the contract does not provide that the parties should share in the profits or losses; neither does it provide for any community property or joint control, and conceding that they proceeded in accordance with the contract we do not think there was any partnership between Adams Brothers or J. E. & J. T. Adams, and the Adamses could not be held liable as partners of McDonald & Goodwin for the obligations of the latter.

Relative to the contention that McDonald was a contractor, and the Adamses were his principals, the reply suggested by defendants that the rights and obligations of the parties (Adamses and McDonald & Goodwin) would have to be determined either under the law relative to "Leases of Things" or "Sales" as provided by the Civil Code, and that the law relative to contracts of hire or "Leases of Labor or Industry" where the terms "principal" and "contractor" have a special significance could not have any special application, may have been sufficient, if the terms "principal" and "contractor" used in the Employers' Liability Act are considered in their usual relation.

The plaintiff's contention, however, appears to be that the terms "principal" and "contractor" as used in the statute (Section 6) have a broader significance than when used to designate the parties to a contract of "Lease of Labor or Industry", and considering that the statute should be liberally construed in favor of the employee, and looking beyond the law which would govern as between the parties, he contends that the Adamses, having leased the mill and thereby bound themselves to

operate it and manufacture lumber, and that logs being necessary in the manufacture, and the lessees having bound themselves to purchase logs from McDonald & Goodwin only, thereby contracted with McDonald & Goodwin to log the mill and were the principals of McDonald & Goodwin.

We do not understand plaintiff to contend that the terms "principal" and "contractor" as used in the statute should be considered as synonymous with "obligee" and "obligor" or "contractee" and "contractor" as commonly used, nor to contend that the person who undertakes to conduct a hazardous business is to be considered as a "principal" with relation to the employees who may be employed by the person from whom material, fuel or other articles of merchandise necessary in conducting the hazardous business are obtained.

However, the plaintiff's position is stated in a very general way, and as we do not know whether he contends that the work "logging" being done by McDonald was necessarily an incident of the hazardous business of sawmilling, and the Adamses should be held as "principals" from that point of view, or whether he contends that the Adamses had contracted with McDonald & Goodwin to log the mill, and should be held as the principals of McDonald & Goodwin (for whom McDonald is assumed to have been acting) in the hazardous business of "logging", and we shall consider the contract from both points of view.

While it is not so stated, we assume it will be conceded that a person operating a sawmill could contract for and purchase logs to be delivered at the mill, without subjecting himself to liability to the employees of the seller who may be injured while employed by the latter and engaged in hauling the logs or other work neces-

sary or incidental to the delivery of the object sold (Morrison vs. Weber-King Mfg. Co., 6 La. App. 388), and that the legal relation would be the same even though the person operating the mill contracted for and purchased all of the logs used by him from one person or many or exclusively from one, or that the legal situation would be changed if he bound himself to purchase from one person exclusively, and considering the contract and the contention of the plaintiff that the Adamses had let or contracted with McDonald & Goodwin exclusively to furnish logs to the mill, at a price agreed upon for the logs delivered at the mill, we do not think it can be said the Adamses became bound as the "principals" of McDonald & Goodwin.

Neither do we think that the Adams were the principals of McDonald & Goodwin in the logging operations of the latter. The timber which was cut and hauled belonged to McDonald & Goodwin, and although it may be assumed that the price which was agreed to be paid to McDonald & Goodwin for the logs included something for the lease of the mill, it cannot be said (as argued by plaintiff) to have included anything for the expenses of McDonald & Goodwin for "logging" their own timber.

While the statute should be liberally construed in favor of an employee, yet where an employee claims compensation from another than his immediate employer we do not think he is entitled to recover although it appears that the person from whom compensation is claimed was engaged in a hazardous business and that the employee's immediate employer was employed in the business of supplying raw materials, etc., necessary in conducting the hazardous business, in which employment the claimant was engaged, where it appears that the work in which the claimant was

engaged was merely incidental to the consummation by his employer of a contract of sale.

From this point of view we do not deem it necessary to discuss the question of independent contractor, or the effect of the addition of Clause 8, Section 3, by the amendment of 1926.

The judgment appealed from is therefore avoided and reversed, and it is now ordered that plaintiff's demands be rejected at his cost.