**CANNON v. TREMONT LUMBER CO.**
**et al.**

No. 5492.

Court of Appeal of Louisiana.
Second Circuit.

June 1, 1937.

Rehearing Denied June 30, 1937.

Julius T. Long, of Shreveport, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, and P. S. Gaharan, Jr., of Jena, for appellees.

882

HAMITER, Judge.

Compensation for total and permanent disability is sought by plaintiff in this action which he brought under the provisions of the Louisiana Employers' Liability Act (Act No. 20 of 1914, as amended) against the Tremont Lumber Company and Ernest E. Terrell.

It is contended by him that on or about October 3, 1935, while working for defendant Terrell at a wage of $9 per week in the cutting of timber, a tree fell, striking his neck, left shoulder and arm, and his back, and totally and permanently disabling him to do work of any reasonable kind; that said Terrell at the time was engaged in the fulfillment of a contract which he had with the Tremont Lumber Company to cut and haul such timber at an agreed price per thousand feet; and that the timber, known as the Gilmore tract, was owned by the said lumber company.

The Tremont Lumber Company denied that it was liable to plaintiff or that he was injured to the extent claimed. It affirmatively averred that during the months of September and October, 1935, the said Ernest E. Terrell was not an employee of or in any manner connected with it; that said Terrell, under a verbal agreement made about the middle of September, 1935, bought from John Gilmore all of the merchantable pine and hardwood timber 12 inches and above located on a 40-acre tract in La Salle parish, La., the consideration for the sale being $3 per thousand feet for the timber cut and hauled; that at the time of the alleged accident plaintiff was working for and paid by Terrell, and that the Tremont Lumber Company was merely buying the logs produced from that tract and owned by Terrell for $9 per thousand feet delivered at its yards; and that there was no obligation on the part of Terrell to sell logs to it.

No answer or other pleadings was filed by defendant Terrell and a preliminary default was regularly entered against him.

After trial on the merits, there was judgment in favor of the Tremont Lumber Company rejecting plaintiff's demands. The court, however, ordered the confirmation of the aforementioned preliminary default and condemned defendant Terrell to pay compensation to plaintiff, during the period of total disability but not exceeding 400 weeks, in the amount of $5.85 per week, together with legal interest, less a credit of $10 paid on November 3, 1935, and a further credit of $10 paid on November 27, 1935.

Plaintiff appealed from the judgment. No appeal was prosecuted by defendant Terrell, and, consequently, the judgment in so far as he is concerned is not before us for review.

The principal question presented for determination appears to be: Was the Gilmore timber on the occurrence of the accident owned by defendant Terrell or the Tremont Lumber Company?

Liability is sought to be fixed on the Tremont Lumber Company under subsection 1, § 6, of Act No. 20 of 1914, as amended by Act No. 85 of 1926, which reads in part as follows: "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or his dependent any compensation under this act which he would have been liable to pay if that employee had been immediately employed by him."

For the success of his case, plaintiff's counsel places much reliance on the case of Carter v. Colfax Lumber & Creosoting Co. et al., 9 La.App. 497, 121 So. 233, which was decided by this court. Therein we held that the plaintiff could recover compensation from the defendant lumber company under the aforementioned provisions of the liability act, where the evidence showed that he was injured while employed by one Tom Matkins in the cutting and loading of logs, and the said Matkins was employed by the lumber company to deliver such logs, at so much per thousand feet, from the timber which it had bought.

The record reveals that the Tremont Lumber Company operates a sawmill at Rochelle, La. The lumber manufactured by it is from timber taken from lands which it owns and also from logs frequently purchased from independent owners for so much per thousand feet delivered at its mill or at the railroad. Terrell's

usual business was the logging of timber for the owner thereof at a stipulated price per thousand feet. Almost continuously since 1933 he operated under a contract with the Tremont Lumber Company in the cutting and hauling of its timber. Occasionally, however, during that period he worked for other companies.

There is evidence in the record tending to show that Terrell purchased the Gilmore timber, and commenced the logging of it about two weeks after he ceased operations on the lands owned by the Tremont Lumber Company. His agreement with the defendant lumber company provided for payment of $9.25 per thousand feet for the logs on delivery at the mill; of this consideration $4 was to be paid by the lumber company direct to Gilmore, while the balance of $5.25 was payable to him. No profit was made by Terrell out of the stumpage. Terrell furnished all tools and trucks and employed and paid the wages of all helpers, including plaintiff, that were necessary in the performance of the logging work. The tract, which contained about 60,000 feet of merchantable timber, was actually and in reality originally owned by Mrs. Kate Mosley instead of John Gilmore.

Testimony was also given to the effect that Terrell was privileged to furnish the Gilmore timber to any mill that he so desired, and that at least on one previous occasion he had independently bought timber and sold the logs to the Urania Lumber Company.

On the other hand, the record contains proof that Mr. S. M. Abel, the land and timber agent for the Tremont Lumber Company, visited the tract before the operations began, and during the process of cutting and hauling he was there three or four times looking over the timber and giving instructions as to the kind and size of logs desired. On one occasion, he, together with the company's foreman, was on the property establishing its lines and corners. After the cutting and hauling was completed and the logs were accepted, the lumber company paid Terrell $5.25 per thousand feet, this being the usual logging charge, while it paid Gilmore $4 per thousand feet stumpage.

After the trial of the merits, but before the rendition of judgment, plaintiff filed a motion to reopen the case. Attached to this motion was a letter written by the above-named John Gilmore to his sister, Mrs. Kate Mosley, the actual owner of the timber, bearing date September 12, 1935. In this letter the writer stated:

"I went to the sawmill company today to see about selling your timber. * * * The sawmill company will send you your checks each payday. If you will accept $3.00 per thousand for it, write me a letter saying you will accept so that the company will buy it."

Also attached to the motion is an affidavit and a letter of Mrs. Mosley in which she asserts that she received only two checks for the timber, and both of these were drawn on and forwarded to her by the lumber company. One was for $123 and the other for $60. She further states that she understood all of the time that she was selling it to the Tremont Lumber Company through her agent, John Gilmore.

Notwithstanding the statement made by John Gilmore in his letter of September 12, 1935, which is above quoted, he testified, on the trial of the case, that he did not go to the Tremont Lumber Company officials before the cutting of the timber began, and that he sold the timber to Terrell. Furthermore, conflicting with the assertion of Mrs. Mosley that she received only the lumber company's checks, is the testimony of Mr. Gilmore that he bought a cashier's check and mailed it in payment of the timber.

In view of the action of the lumber company in surveying the land, giving instructions, and making inspections of the timber at the place of operations, paying to Terrell only the usual cutting and hauling charges, and other circumstances above referred to, we are not entirely satisfied that Terrell was the owner of the timber when the accident occurred or that the judgment of the trial court is correct. At least, by reason of the above enumerated events, we are unable to pronounce definitely and finally on this appeal.

It is our belief that justice will be better subserved by remanding the case for the purpose of receiving additional testimony, and also all available documentary proof, relating to the logging transaction in question. Article .906 of the Code of Practice and numerous cases in our jurisprudence authorize this course. Furthermore, technical or formal rules of procedure are not generally applicable in compensation suits such as this.

The evidence in the record regarding plaintiff's disability and his rate of wages is likewise not so satisfactory as it might be. Additional evidence respecting these matters should be adduced when the case is again heard in the trial court.

For the reasons assigned, the judgment of the trial court dismissing plaintiff's suit as against Tremont Lumber Company is set aside and the case is remanded for further proceedings not inconsistent with the views 'herein expressed. All costs shall abide the final determination of the case.