### SCOTT v. FUTRELL et al.

### No. 6135.

Court of Appeal of Louisiana.
Second Circuit.

July 5, 1940.

Rehearing Denied Aug. 1, 1940.

L. F. Grigsby and A. B. Parker, both of Minden, and J. B. Crow, of Shreveport, for appellant.

Whitfield Jack and Wellborn Jack, both of Shreveport, for.appellees.

HAMITER, Judge.

A tree fell on plaintiff, John Scott, on September 17, 1937, while he was engaged in cutting timber on lands owned by the Westdale Corporation in Red River Parish, Louisiana, causing severe injuries to him that resulted in total and permanent disability. The labor was being performed pursuant to arrangements that he made with one Jim Jones, and the remuneration therefor was $2.50 for each thousand feet of timber cut.

This suit, which has for its purpose the recovery of benefits under the Louisiana Employers' Liability Act, Act No. 20 of 1914, is directed against the said Jim Jones, and also against Berry D. Futrell, who operates under the trade name of Futrell Veneer Company.

It is alleged in the petition that on the above mentioned date, and for some time prior and subsequent thereto, the named defendants were jointly engaged for their mutual profit in the business of cutting and making blocks from hardwood timber to be manufactured into veneer; that plaintiff was employed by them in the capacity of common laborer in their said enterprise; that his duties in the service of said defendants "consisted of sawing and/or cutting down trees and sawing the same into blocks the lengths required by his said employers, and general common labor work in connection with getting out said blocks"; and that when injured he was undertaking the performance of these duties.

In the joint answer of the defendants, it is denied that plaintiff was in the employ of Berry D. Futrell. Affirmatively, they aver that he was an employee of defendant Jones, and that the latter was engaged in the cutting of said timber, transporting it to the veneer mill, and there selling it to defendant Futrell. Specifically, it is therein alleged, and this is the only defense urged, that, "at the time of plaintiff's injury, defendant Jones was neither an employee nor an independent contractor in his relationship to defendant Futrell. Plaintiff was an employee of defendant Jones and not an employee of defendant Futrell. The only relationship between defendant Futrell and defendant Jones was that of buyer and seller."

A trial of the merits was had, and the district court granted plaintiff judgment against defendant Jones for appropriate compensation, medical expenses and costs. His demands against Berry D. Futrell were rejected.

This appeal is being prosecuted by plaintiff.

It is correctly stated in the brief of counsel for Futrell that, "Defendant Jim Jones' liability is not at issue. It was practically conceded in his answer and was never seriously contested. The trial and appeal center solely on the question of the relationship between Jones and defendant Futrell." Incidentally, it is to be noticed that defendant Jones perfected no appeal from the judgment rendered against him, and he is not a party litigant in this court. Futrell, in view of this, will hereinafter be referred to as defendant.

It is clearly shown by the record that, and as before stated, the services of plaintiff were engaged by Jones. Therefore, if the relationship existing between Jones and defendant was that of vendor and vendee, under the well settled jurisprudence of this state plaintiff's demands against defendant were properly rejected by the district court. Eaves v. Hillyer-Edwards-Fuller, Inc., La.App., 135 So. 720; Whitley v. Hillyer-Deutsch-Edwards, Inc. et al., La.App., 142 So. 798; Windham v. Newport Co., La.App., 143 So. 538; Brasher v. Industrial Lumber Co., Inc. et al., La.App., 165 So. 524; Harris v. Southern Kraft Corp., La.App., 183 So. 65; Anthony v. Natalbany Lumber Co., Ltd., La.App., 187 So. 288.

Continuously from the year 1925 until June, 1939, defendant operated his mill in the Agurs section of the City of Shreveport, cutting veneer from blocks or short logs of timber and manufacturing it into

boxes and crates. In the last named month, he removed such mill to Pineville, Louisiana, and there resumed operations.

It is his testimony that only in the year 1929 did he acquire a tract of timber and perform the logging thereof through employees. At all other times he purchased the blocks needed, paying the market price on delivery at the mill, which ranged from $12.50 to $14.50 per thousand feet, for those that met his specifications. The unsuitable ones were not accepted nor payment made therefor. During the winter seasons, an advance in the price was noted, this being due primarily to the fact that logging was then more difficult. Usually he was supplied by from 15 to 25 different persons that engaged in the timber cutting and logging business, it being his custom to buy from anyone having blocks for sale; and the material came to him both on trucks and in railroad cars. The stumpage was usually paid to the timber owner when requested; otherwise, he gave the entire purchase price to the person with whom he dealt.

Jones, says defendant, had sold blocks to him for several years before the occurrence of the accident on September 17, 1937. On delivery, they were always scaled; and payment for the accepted ones, after certain necessary deductions, was made on the following Saturday. Defendant had no control over Jones or his operations whatever. The latter worked when he wished, selected the timber that he purchased, cut and logged, and decided on the method of delivery. Two trucks were owned and operated by Jones; and these, together with railroad facilities, were employed in transporting the blocks. Defendant made no arrangements for the acquiring of these trucks.

With reference to the tract of timber on the Westdale Corporation land, during the cutting of which plaintiff was injured, defendant testifies that the manager of that corporation, A. J. Stone, requested the deducting of the stumpage from the payments due to Jones; and that this request was complied with during the entire time that the blocks came from that tract, a period of about eight months.

The defense made by Futrell is substantiated, and his testimony corroborated in many instances, by evidence of the said Stone and of John A. James, both of whom appeared in his behalf.

Stone testifies that Jones came alone to the office of his company, located in the Slattery Building in Shreveport, and offered to purchase the timber. At Jones' suggestion, he talked by telephone with Futrell, who agreed to withhold the stumpage and mail it to the company; thereupon he sold the timber to Jim Jones at $3 per thousand feet. No dealings, other than this telephone conversation and the receiving of the stumpage payments, were ever had by him with defendant. Later, states Stone, stumpage money was also received from the Caddo Crate Company, after its manager had inquired if purchases of blocks from Jones would be satisfactory.

It is the testimony of John A. James, the manager of the Caddo Crate Company which is a competitor of defendant, that he bought blocks from Jones during several years beginning July 24, 1937; and that his purchases were made on the same basis and according to the same method described by defendant. Some of the blocks came from the Westdale Corporation tract and the stumpage under such purchases was paid direct to the land owner.

There are certain circumstances disclosed by the record which seemingly favor the contention of plaintiff that Jones was a mere employee of defendant. For instance, it appears that saws and axes used by Jones in his logging operations were purchased by defendant, who carried an account at a wholesale hardware house; and the charge tickets for gasoline and oil consumed by the trucks were sent to defendant and paid by him at the end of each week. However, these transactions were accommodation in character, and defendant was reimbursed for his expenditures through and by means of deductions in their amounts from the weekly payments made to Jones.

Also to be noted is the fact that Jones began cutting timber near Pineville, Louisiana, several months before defendant moved his establishment to that city; and his operations continued there. In connection with this, counsel for plaintiff assert that he was sent to that locality by defendant, in the capacity of an employee and as an advance man, for the purpose of assembling blocks and having them available and ready to satisfy the mill's requirements when the removal occurred. This assertion is strenuously denied by defendant.

Obviously the district judge, in sustaining the defense offered, concluded that the referred to incidents were not sufficiently weighty to overcome the above discussed positive testimony of Stone, James and Futrell; and with respect to his conclusion, which concerns the resolving of facts, we are unable to say that he manifestly erred. The existence of the contended relationship of purchaser and seller, as between defendant and Jones, was entirely possible, notwithstanding the occurrence of the several circumstances pointed out and stressed by plaintiff in aid of the success of his case.

The cases of Robinson et al v. Younse Lumber Co. et al., 8 La.App. 160; Carter v. Colfax Lumber & Creosoting Co., 9 La.App. 497, 121 So. 233; and Davis v. Buckley, La.App., 153 So. 303, cited and relied on by plaintiff's counsel, are distinguishable by reason of the existence of different factual situations.

Pertinent to a discussion of this case is the following comment found in Harris v. Southern Kraft Corporation et al., supra, decided by this court, viz. [183 So. 66]: "All courts, we believe, conscientiously endeavor to enforce the provisions of this great humanitarian expression of the lawmaking power in a spirit of liberality towards the injured workman; and this attitude is unquestionably justified. But, regardless of all this, judgments in such cases must have dependable evidence as their basis. A plaintiff suing for such compensation must prove his case, as in other cases. Conjecture cannot serve this purpose."

We find no error in the judgment appealed from, and it is affirmed.