## PERKINS v. HILLYER DEUTSCH EDWARDS, Inc., et al.

### No. 2187.

Court of Appeal of Louisiana. First Circuit.

Jan. 14, 1941.

Julius T. Long, of Shreveport, for appellant.

Cline, Thompson, Lawes & Cavanaugh, of Lake Charles, for appellees.

OTT, Judge.

The plaintiff was injured while cutting and hewing cross-ties for one Johnnie Cloud on February 13, 1940, and he sues Cloud and Hillyer Deutsch Edwards, Inc., for compensation at the rate of $11.70 per week for 400 weeks, alleging total permanent disability. Judgment was rendered against Cloud for compensation at the rate of $8.74 per week for a period not exceeding four hundred weeks. The suit was dismissed as to the other defendant. The plaintiff has appealed from that judgment of dismissal, but Cloud has not appealed. So the only question in this case is whether or not Hillyer Deutsch Edwards, Inc., is liable for compensation to the plaintiff with Cloud. The Hillyer Deutsch Edwards, Inc., is a lumber company operating at Oakdale in Allen Parish, and this company will be referred to as the lumber company.

The plaintiff claims that while he was immediately employed by Cloud, the latter was an agent or contractor of the lumber company in cutting and hauling sawlogs and cross-ties for the lumber company from lands owned by the Rice Land Lumber Company (Rice Institute) of Houston, Texas; that he was injured while cutting and hewing ties from this timber.

The contention of the lumber company is that Cloud purchased this timber from the Rice Institute, through its agents at Lake Charles, and sold the logs and cross-ties cut therefrom by him to the lumber company for a fixed price for the logs and a fixed price per tie delivered to the lumber company at its mill in Oakdale; that the only relation existing between it and Cloud was that of purchaser and vendor of the logs and ties at a fixed price delivered at its mill, and that its only connection with the purchase of the timber from the Rice Institute was an agreement to hold out the stumpage of $5 per thousand feet and remit this amount direct to the agents of the Rice Institute.

The record shows that in June and July of 1939 the lumber company had some correspondence with the agents of the Rice Institute relative to the purchase by the former of the timber on lands owned by the Institute in this state. The lumber company made a preliminary survey of the timber and wrote the agents a letter on July 12, 1939, that under present market conditions it would not be interested in purchasing the timber.

Some time in October following, Johnnie Cloud, who had been for several years engaged in the logging business and in cutting and hauling cross-ties and pulp wood for the defendant lumber company and for other companies, went to Lake Charles with Alvin Laird, a surveyor in the employ of the defendant lumber company and another company. While Cloud went with Laird on the invitation of the latter, neither of them went with the purpose of buying the timber from the agents of the Rice Institute, so far as the record shows. However, as the two were about to leave Lake Charles, they passed the office of the agents and Laird stated that these were the agents who had charge of the Rice Institute timber, whereupon Cloud indicated a desire to go in and see them with the idea of ascertaining if he might purchase the timber. Laird, who knew the agents, introduced Cloud to them and sat in the office while the discussion was had between Cloud and the agents relative to his purchase of the timber at $5 per thousand feet. While Laird did not take part in the negotiations, he did state to these agents that Cloud was a responsible man when Cloud advised them that he did not have the money to pay for the timber, but that he intended to sell it to the defendant lumber company and could arrange to have that company hold out the stumpage. The agents advised Cloud that they would take the matter up with the Rice Institute and let him know later.

On October 23rd, the defendant lumber company wrote these agents to the effect that Cloud had approached it relative to selling the logs from the Rice Institute lands, stating to the agents that if they made an agreement with Cloud for the timber, the lumber company would be glad

to hold out the stumpage price and remit them direct. On November 27th, the agents wrote the defendant lumber company in reply to its letter of October 23rd concerning the cutting of timber on the Rice lands by John Cloud, advising that it was agreeable to the Rice Institute to sell this timber to Cloud, and a copy of a letter written Cloud the same day was enclosed in the letter to the lumber company. The letter from the agents to Cloud stated that the Institute had agreed to sell the timber to him on certain lands at $5 per thousand, with the understanding that no timber· smaller than 12 inches in diameter one foot from the ground was to be cut, and with the further understanding that the timber was to be delivered to the defendant lumber company, who was to scale the timber and remit the stumpage direct to these agents.

Under this arrangement Cloud proceeded to cut and haul the sawlogs from this timber and also cut and delivered cross-ties to the defendant lumber company. The lumber company remitted to the agents for the stumpage on all sawlogs delivered to it, but did not remit for any stumpage on the cross-ties cut from the land by Cloud and delivered to it for use· on its tram road. The plaintiff was employed by Cloud in getting out these ties when he was injured.

Cloud testified that he cut these ties from the tops and defective trees and from the timber that was damaged in cutting the sawlogs; that he understood that his agreement with the agents gave him this right and that he sold all the ties so cut from this timber to the defendant lumber company. These ties were made out of hardwood timber, and the lumber company obtained an affidavit from the agents on December 15, 1939, to the effect that the Rice Institute had sold to Cloud all of the hardwood timber for $5 per thousand feet on the land from which the ties and logs were taken. A similar affidavit was obtained from Cloud.

We will mention two other circumstances which the plaintiff claims tend to support his contention that the defendant lumber company was the real purchaser of the timber from the Rice Institute and that Cloud was nothing more than its agent or contractor in cutting and hauling the timber; that the effect and purpose of the entire arrangement was to make it appear that Cloud purchased the timber from Rice Institute and sold it to the lumber com-

pany at a fixed price in order to evade liability on the part of the lumber company for compensation, contrary to the provisions of Section 36 of Act No. 20 of 1914.

There is some testimony to the effect that the surveyor, Laird, was on this land several times while the logs and ties were being cut. His explanation of that is that he was there ·to see that no timber was cut over the line on lands owned by another company by whom he was also employed as surveyor as well as being the surveyor of the defendant lumber company. It is also shown that one of the officials of the lumber company had Cloud cut some rails from this timber for use in building a fence around a Boy Scout camp on the land of one of the company officials. These rails were made from the tops of the trees cut in making the sawlogs and had nothing to do with the business of the lumber company.

Under the facts and circumstances herein related, we are asked to hold that the lumber company was not a purchaser in good faith of the logs and ties from Cloud; that the effect of the arrangement between the parties was a subterfuge or device to permit the lumber company to escape liability for compensation, and thus relegate the plaintiff to a doubtful recovery against a financially irresponsible interposed agent or contractor under the guise of a vendor.

As we stated in the very similar case of Hatch v. Industrial Lumber Company et al., 199 So. 587, this day decided, if we were justified in holding that the arrangement under which this timber was being cut was nothing more than a device or subterfuge to avoid payment of compensation and was not made in good faith as a bona fide sale and purchase of the logs and ties as between Cloud and the lumber company, we would not hesitate to break through the form of the agreement in order to reach its real purpose and effect. But to so hold we would not only have to ignore. most of the direct and positive evidence, but we would have to give undue weight to mere circumstances and coincidences, as well as to what amounts to mere suspicion and innuendo.

The lumber company indicated its interest in this timber by negotiating for its purchase three· or four months before Cloud bought it, but there is no reason to impugn its motives in advising the Rice agents that it was not interested in making the purchase. We can see no reason for the lum-

ber company to later change its purpose and decide to purchase the timber and then put out Cloud as a front or ostensible purchaser for the purpose of evading liability under the Compensation Law.

Finding no error in the judgment appealed from, the same is hereby affirmed.