LOTTINGER, Judge.
This is a suit under the Workmen’s Compensation laws of the State of Louisiana, LSA-R.S. 23:1021 et seq-., for total and permanent disability resulting, from an accidental injury sustained by plaintiff in the *694 course and scope of his alleged hazardous employment with O. C. Hennessy, Inc., a Texas Corporation. L. B. “Jack” Hennessy (hereinafter referred to as Jack Hennessy) was joined as a co-defendant, but it was proved and is now admitted that Jack Hennessy was an agent for the defendant corporation and, therefore, he was released from any personal liability. The Lower Court found that the plaintiff was employed by one E. H. Malone; that E. H. Malone was the contractor working for the defendant, the principal; that the contract with E. H. Malone was necessary and incidental to the business of defendant corporation so as to place plaintiff under the provision of LSA-R.S. 23:1061, formerly Section 6, Paragraph 1 of the Workmen’s Compensation Act. The Lower Court further found total and permanent disability and rendered judgment at $30 per week for four hundred weeks commencing October 13, 1951, together with legal interest on each past due installment; plus $500 medical benefits, and all costs.
Before this suit was tried in the Lower Court the defendant, O. C. Hennessy, Inc., filed a call in warranty against United States Fidelity and Guaranty Company (hereinafter sometimes referred to as U. S. F. & G.) asking for judgment in defendant’s favor and against U. S. F. & G. for the amounts for which they may be cast, together with attorney’s fees. Defendant alleged that U. S. F. & G. issued a policy of Compensation Insurance to them which provided coverage in this case. The Lower Court granted judgment in favor of defendant, O. C. Hennessy, Inc., condemning the said U. S. F. & G. to pay to ¡O. C. Hennessy, Inc. any and all liability incurred by it under this judgment plus $500 attorney’s fees. Defendants O. C. Hennessy, Inc. and U. S. F. & G. appealed.
The accident occurred on October 13, 1951 while plaintiff was hauling certain timber “sticks” which were later to be cut into railroad crossties. The entire operation was conducted in Evangeline Parish, Louisiana. The primary question for decision concerns the relationship between the plaintiff and defendant. Was plaintiff an employee of defendant or was plaintiff an employee of a contractor operating for the defendant such that the provisions of LSA-R.S. 23:1061, formerly Section 6 of the Workmen’s Compensation Act apply or was defendant involved in the case solely as a purchaser of crossties?
Defendant contends that its business in Louisiana is limited to the purchasing of railroad crossties. Defendant’s operations start each year when the railroad company informs the defendant 0. C. Hennessy Inc. as to the number and specifications of the ties it will accept. The defendant then informs certain lumber producers that they will bu-y ties at a certain price delivered to certain points along the Missouri Pacific Railroad. After the ties have been delivered to these points defendant sends an agent to inspect the ties. Those that come up to grade are paid for and the others are rejected. To help facilitate procurement of ties, the corporation owned certain trucks or power saws and either owned or financed movable sawmills, which it leased or sold to the various individuals actually engaged in the cutting and hauling of the ties the designated points at the railroad. Should these movable items of equipment be leased to individuals, they were leased on a rental basis of so much per tie on all ties delivered to the company. For instance, here the price for the rental of a truck was 15‡ per tie. If an individual delivered one hundred ties to a railroad crossing, when final settlement was made with him, $15 was deducted for rental of said truck. Similarly, the other prices charged were 5‡ per tie for lease of power saws, 2>5‡ per tie for milling the ties, and 20^ per tie for stumpage. The regulation and calculation of the payments was generally made by the buyer, and he retained from the purchase price any rentals which were due by the people who cut and made the ties and also held out the milling fees and the stumpage, paying those amounts to the individuals concerned. The reason for this was that many of the operators engaged in the cutting and hauling of ties are impecunious, and it was only for this reason that any amounts due as lease money or stumpage money or mill *695 money was held out of the final settlement and paid by the defendant O. C. Hennessy, Inc. to these people. This, plaintiff argues, is a common and ordinary .practice in the lumber business.
In addition to these facts as to defendant’s general operations, we must consider defendant’s specific arrangements with the plaintiff. In the month of June 1951, O. C. Hennessy, Inc. started purchasing cross-ties in Louisiana. At that time it owned the logging rights on a tract of land near Basile in Evangeline Parish. The time for removal of the lumber on this tract was fast approaching, so the corporation through its agent Jack Hennessy contacted the plaintiff who lived in Houston, Texas. The principal stockholder of the defendant corporation is the father of Jack Hennessy and he was of the opinion plaintiff was a good worker. Jack Hennessy took the plaintiff to Basile and suggested that he take over the operation for the. logging of this particular tract. At this time he explained to plaintiff that he could rent the necessary power saws and trucks at so much per tie, and that the corporation would make arrangements for plaintiff’s groceries, for his oil and gas, and they would rent a house for him. In turn, plaintiff was to receive pay at the rate of so much per tie and deductions were to be made from this sum for rent on the power saw and the trucks. Deductions were also to be made from plaintiff’s earnings for groceries, gas and oil, and house rent. This arrangement was satisfactory to plaintiff, so Jack Hennessy moved plaintiff and ..his family from Houston, Texas to Basile, Louisiana. Plaintiff made his own arrangements for employing men to help him log the timber, however, since plaintiff was an illiterate thirty-one year old Negro it was impossible for him to compute the pay which he owed to his employees. Plaintiff’s wife helped with these matters and Jack Hennessy helped both plaintiff and plaintiff’s wife make these computations. Jack Hennessy also supervised plaintiff’s operations on the Basile tract.
About the end of September, all of the timber owned by O. C. Hennessy, Inc. at Basile had been cut, and it is important to note that from that date forward plaintiff’s and defendant’s relationship changed. Sometime during the early part of August, 1951, Mr. Jack Hennessy and a Mr. E. H. Malone met each other. Mr. Malone had the right to cut timber on a tract of land owned by Erwin Fontenot and located at St. Landry, Louisiana (Evangeline Parish). It seems that this timber was not entirely suitable for logging and therefore Mr. Malone wished to make some arrangements to make crossties out of a portion of said timber. Following this discussion and on the 15th of August 1951, the defendant sold by credit sale one Corley Tie Mill to be used for the purpose of manufacturing railroad crossties. Mr. Malone was to pay for the credit portion of the purchase price at the rate of ten cents per crosstie prqduced and further Mr. Malone bound himself to offer to defendant all crossties which were produced by the mill. Although plaintiff saw fit to introduce certain evidence and to argue that .this sale was not genuine, it is our opinion that this was a bona fide transaction. Mr. Malone located and operated this Corley Tie Mill on the Fontenot tract at St. Landry. When the defendant’s Basile operation was concluded some time in September 1951, Mr. Jack Hennessy informed Mr. E. H. Malone that Aurelia Jones was a good worker and was available and asked Mr. Malone what he would pay for Jones’ services. Mr. Malone advised Jack Hennessy that he would pay plaintiff 60‡ a tie to cut and haul from the Fontenot tract. If the timber was cut by Malone’s own crew, plaintiff would be paid 40^ per tie for hauling. Mr. Jack Hennessy then conveyed this information to Aurelia Jones and further informed the plaintiff that he could continue to use the corporation’s truck and power saw under the same rental basis, to be used while working for Malone. Plaintiff considered these terms and decided that he wanted to work under these conditions. Then defendant’s agent brought the plaintiff over and introduced him to Mr. Malone, and Mr. Malone put the plaintiff to work on the Fontenot tract. Mr. Malone and Mr. Fontenot are the ones who showed the plaintiff where to cut and *696 where to haul. Mr. Hennessy never did go upon the Fontenot tract. Mr. Malone is the party who gave all instructions as to where the sticks were to be hauled. The record makes it abundantly clear that as to the St. Landry operation, the only ties that defendant bought were those which came up to specification and were delivered to a siding at Eunice, Louisiana. All culls were the property of Malone and Fontenot.
In addition to the above facts, it is true that after the Basile operation the plaintiff was in debt to the defendant corporation, and that defendant’s agent, Jack Hennessy, testified that this was the reason he wanted to see that the plaintiff obtained work. It is also true that after plaintiff agreed to cut and haul for Mr. Malon'e, Jack Hennessy moved plaintiff’s family to the location in St. Landry. Jack Hennessy made arrangements to rent a house for the plaintiff to occupy at St. Landry and paid the first two weeks rent, for which he was to be reimbursed. Jack Hennessy guaranteed a line of credit so that plaintiff could purchase groceries at the St. Landry location. These factors however' do not in any way indicate that the defendant either controlled or had the right to control the plaintiff’s work on the Fontenot tract at St. Landry.
It was on October 13, 1951 while plaintiff was hauling timber to Malone’s Mill from the Fontenot tract for the price of 40‡ per stick, that plaintiff sustained an accident which rendered him totally and permanently disabled.
The defendant’s last purchase of ties from Mr. Malone was made on October 2, 1951. The record does show that on October 12, 1951 the defendant advanced $360 to Mr. Malone based on an agreement that some six hundred sticks which were on Malone’s yard would be manufactured and delivered to defendant’s railroad siding in Eunice for sale to the defendant. This sale did not materialize because Mr. Malone was offered more money for the ties by one Stanley Gates of Oakdale, Louisiana and Mr. Malone sold those ties to Mr. Gates. Mr. Malone later repaid this $360 to the defendant. Mr. Malone also testified that some of the timber cut from the Fon-tenot tract was sold by him to Kellog Lumber Company.
We feel that Professor Wex S. Malone’s Law Review Article reported at TO Louisiana Law Review page 25, et seq. sets forth the pertinent and controlling law applicable here. At page 29 of this article Professor Malone distinguishes the relationship of independent contractor from that of seller or buyer as follows:
“Section Six of the Workmen’s Compensation Act is not brought into operation unless the relationship of principal and contractor exists between the defendant and the claimant’s employer. The employees of a seller have no claim for compensation against the buyer of the article upon which they worked unless they were also employees of the buyer and were subject to his control (Harville v. Eicher-Woodland Lbr. Co., 3 La.App. 406 (2d cir.1926).
“The buyer is not made liable to the seller’s employees by Section Six even though an exclusive buying and selling agreement existed: Langley v. Widow and Heirs of McDonald, 7 La.App. 715 (2d cir.1927); Williams v. George, 15 So.2d 823 (La.App. 2d cir.1943) nor is it of any consequence that the buyer reserved the right to reject commodities sold under the contract, West v. Martin Lumber Co., 7 La.App. 366 (1st cir.1927); Anthony v. Natalbany Lumber Co., Ltd., 187 So. 288 (La.App. 1st cir. 1939) nor that he discharged taxes which were properly chargeable against the seller Whitley v. Hillyer-Deutsch-Edwards, Inc., 142 So. 798 (La.App. 1st cir. 1932) (sever-anee tax on timber). However, when it is doubtful whether the relationship is that of buyer and seller or principal and contractor, the fact that the severance tax was charged against intermediary may be persuasive. Reed v. J. W. Jeffries Lumber Co., 9 So.2d 87 (La.App. 2d cir. 1942), or otherwise assisted the seller in keeping his records *697 in order Williams v. George, 15 So.2d 823 (La.App. 2d cir. 1943). Likewise, the buyer is not subjected to compensation because he furnished materials or tools to enable the seller to fulfill his ■contract, Windham v. Newport Co., 143 So. 538 (La.App. 1st cir. 1933); Scott v. Futrell, 197 So. 688 (La.App. 2d cir. 1940). Even the fact that the buyer paid the seller’s employees, Miller v. Brenner Lumber Co., 8 La.App. 141 (2d cir. 1928); Eaves v. Hillyer-Edwards-Fuller, Inc., 139 So. 510 (La.App. 2d cir. 1932) or carried compensation insurance for their protection, Eaves v. Hillyer-Edwards-Fuller, Inc., 139 So. 510 (La.App. 2d cir. 1932) has not served to make him liable for compensation under this Section.
“The great bulk of the cases in which the defendant claimed immunity from Section Six liability because of his status as purchaser have arisen in connection with lumbering transactions. From a total of twenty-seven reported cases in which the problem was presented, only the following three cases related to transactions other than lumbering; Brown v. City of Shreveport, 15 So.2d 234 (La.App. 2d cir. 1943); Wilson v. Roberts, 194 So. 88 (La.App. 2d cir. 1940); Jones v. Pan American Petroleum Corp., 190 So. 204 (La.App. 2d cir. 1939). Not infrequently the owner of a tract of timberland undertakes to log his own property under a contract to sell the timber to a mill or other lumber concern. It is clear that under such circumstances the owner’s employees have no valid claim against the buyer in the event of injury, Morrison v. Weber-King Mfg. Co., 6 La.App. 388 (1st cir. 1927); Langley v. Widow and Heirs of McDonald, 7 La.App. 715 (2d cir. 1927); West v. Martin Lumber Co., 7 La.App. 366 (1st cir. 1927); Miller v. Brenner Lumber Co., 8 La.App. 141 (2d cir. 1928); Williams v. George, 15 So.2d 823 (La.App. 2d cir. 1943). If, however, the wood is being procured from property owned by defendant, the latter will be regard-ed as employer of a contractor; James v. Dear & Johnson, Inc., 172 So. 25 (La.App. 1st cir. 1937); Owers v. Louisiana Long Leaf Lumber Co., 14 So.2d 275 (La.App. 1st cir. 1943).
“More often, however, the alleged seller occupies the position of a middleman between the landowner and defendant, the ultimate buyer. He negotiates a purchase of timber from the owner with a definite resale transaction to defendant in prospect. Usually he is financially insolvent and his employee’s compensation claims against him are worthless. Nevertheless, the courts have consistently held that the purchasing mill or concern cannot be made liable either as a partner of the middleman under Section One, Langley v. Widow and Heirs of McDonald, 7 La.App. 715 (2d cir. 1927); Vincent v. Industrial Lumber Co., 199 So. 593 (La.App. 1st cir. 1941) or as a principal under Section Six, Eaves v. Hillyer-Edwards-Fuller, Inc., 139 So. 510 (La.App. 2d cir. 1932); Whitley v. Hillyer-Deutsch-Edwards, Inc., 142 So. 798 (La.App. 1st cir. 1932); Windham v. Newport Co., 143 So. 538 (La.App. 1st cir. 1932); Brasher v. Industrial Lumber Co., Inc., 165 So. 524 (La.App. 1st cir. 1936); Cannon v. Tremont Lumber Co., 188 So. 431 (La.App. 2d cir. 1939); Harris v. Southern Kraft Corp., 183 So. 65 (La.App. 2d cir.1938); * * * Weldon v. Pickering Lumber Corp., 186 So. 371 (La.App. 1st cir. 1939); Anthony v. Natalbany Lumber Co., Ltd., 187 So. 288 (La.App. 1st cir. 1939); Scott v. Futrell, 197 So. 688 (La.App. 2d cir. 1940); Hatch v. Industrial Lumber Co., 199 So. 587 (La.App. 1st cir. 1941); Perkins v. Hillyer Deutsch Edwards, Inc., 199 So. 590 (La.App. 1st cir. 1941); Vincent v. Industrial Lumber Co., 199 So. 593 (La.App. 1st cir. 1941); Reed v. J. W. Jeffries Lumber Co., 9 So.2d 87 (La.App. 2d cir. 1942). But of, Carter v. Colfax Lumber & Creosoting Co. [9 La.App. 497], 121 So. 233 (La.App. 2d cir. 1928); Owers v. Louisi *698 ana Long Leaf Lumber Co., 14 So.2d 275 (La.App. 1st cir. 1943); Grant v. Consolidated Underwriters, 33 So.2d 575 (La.App. 2d cir. 1947). This is apparently not affected by the fact that whatever remuneration the middleman may receive comes solely by reason of the labor bestowed by him and his employees in severing and transporting the timber, Cannon v. Tremont Lumber Co., 175 So. 881 (La.App. 2d cir. 1937); Cannon v. Tremont Lumber Co., 188 So. 431 (La.App. 2d cir. 1939) (same case on retrial)
. “The opinions that have dealt with this type of transaction abound in statements to the effect that the courts are alert to detect the use of the resale device as a means of avoiding compensation liability whenever the middleman is in fact an employee, partner, or contractor acting for the defendant. See Hatch v. Industrial Lumber Co., 199 So. [587] 590 (La.App. 1st cir. 1941); Perkins v. Hillyer Deutsch Edwards, Inc., 199 So. 590, 592 (La.App. 1st cir. 1941); Reed v. J. W. Jeffries Lumber Co., 9 So.2d 87, 90 (La.App. 2d cir. 1942). However, in only one reported case, Carter v. Colfax Lumber & Creosoting Co. [9 La.App. 497], 121 So. 233 (La.App. 2d cir. 1928) have the courts branded such a sale as a subterfuge. Generally, in support of the bona fide character of these arrangements the courts have relied upon the fact that the intermediary negotiated the sale-resale transaction as an independent enterpriser, Eaves v. Hillyer-Edwards-Fuller, Inc., 139 So. 510 (La.App. 2d cir. 1932); Scott v. Futrell, 197 So. 688 (La.App. 2d cir. 1940); Vincent v. Industrial Lumber Co., 199 So. 593 (La.App. 1st cir. 1941); Reed v. J. W. Jeffries Lumber Co., 9 So.2d 87 (La.App. 2d cir. 1942); Windham v. Newport Co., 143 So. 538 (La.App. 1st cir. 1932) (sem-ble) or that he was free to resell to whomsoever he pleased, Cannon v. Tremont Lumber Co., 175 So. 881 (La. App. 2d cir. 1937); Harris v. Southern Kraft Corp., 183 So. 65 (La.App. 2d cir. 1938); Anthony v. Natalbany Lumber Co., Ltd., 187 So. 288 (La.App. 1st cir. 1939); Scott v. Futrell, 197 So. 688 (La.App. 2d cir. 1940); Reed v. J. W. Jeffries Lumber Co., 9 So.2d 87 (La.App. 2d cir. 1942); Williams v. George, 15 So.2d 823 (La.App. 2d cir. 1943). Weldon v. Pickering Lumber Corp., 186 So. 371 (La.App. 1st cir. 1939); Stanley v. Industrial Lumber Co., 193 So. 367 (La.App. 1st cir. 1940) (In the last two named cases the court found defendant was a seller and that the intermediary was a buyer. The court emphasized in both instances that the latter was free to resell to whomsoever he chose.) Nevertheless, on several occasions they have supported deals in which the intermediary was a former employee of defendant. Eaves v. Hillyer-Edwards-Fuller, Inc., 139 So. 510 (La.App. 2d cir. 1932); Cannon v. Tremont Lumber Co., 175 So. 881 (La.App. 2d cir. 1937); Cannon v. Tremont Lumber Co., 188 So. 431 (La.App. 2d cir. 1939) (same case on retrial); Hatch v. Industrial Lumber Co., 199 So. [587] 590 (La.App. 1st cir. 1941). See also Scott v. Futrell, 197 So. 688 (La.App. 2d cir. 1940). Cf. Weldon v. Pickering Lumber Corp., 186 So. 371 (La.App. 1st cir. 1939). But cf. Carter v. Colfax Lumber & Creosoting Co. [9 La.App. 497], 121 So. 233 (La.App. 2d cir. 1928), where fact that intermediary was a former employee of defendant was persuasive in characterizing the former as an employee.) or was operating under an exclusive resale arrangement with the latter, Hatch v. Industrial Lumber Co., 199 So. 587 (La.App. 1st cir. 1941); Perkins v. Hillyer Deutsch Edwards, Inc., 199 So. 590 (La.App. 1st cir. 1941). Whether the intermediary regarded himself as a seller or a contractor has been regarded as important in determining his status in a few cases (Carter v. Colfax Lumber & Creosoting Co. [9 La.App. *699 497], 121 So. 233 (La.App. 2d cir. 1928) (intermediary regarded himself as an employee purchasing for defendant; the court held he was not a seller). Compare Eaves v. Hillyer-Edwards-Fuller, Inc., 139 So. 510 (La.App. 2d cir. 1932).
“In two reported instances where the transaction was regarded as a bona fide sale the initial negotiations were conducted with the assistance of a representative of the defendant, Hatch v. Industrial Lumber Co., 199 So. 587 (La.App. 1st cir. 1941) (owner’s initial offer to sell directly to defendant was rejected. Defendant used intermediary to cover up the price.); Perkins v. Hillyer Deutsch Edwards, Inc., 199 So. 590 (La.App. 1st cir. 1941) (similar). Cf. Vincent v. Industrial Lumber Co., 199 So. 593 (La.App. 1st cir. 1941) (defendant’s representatives visited owner to see that timber under consideration conformed to defendant’s specifications), and in one extreme decision the negotiations had been completed between the landowner and defendant before the intermediary was apprised of the transaction (Grant v. Consolidated Underwriters, 33 So.2d 575) (La.App. 2d cir. 1947. In nearly all the cases the defendant was consulted and his approval secured prior to the consummation of the transaction. Since the middleman usually is not financially solvent the landowner generally required the defendant to hold back the stumpage charge from the purchase price on resale and remit this directly to him. Thus the sale to the middleman is made exclusively upon the credit of the defendant. However, in three reported cases when the intermediary purchased for purpose of resale to defendant, it appeared that he purchased the timber with his own funds or credit: -Whitley v. Hillyer-Deutsch-Edwards, Inc., 142 So. 798 (La.App. 1st cir. 1932); Harris v. Southern Kraft Corp., 183 So. 65 (La.App. 2d cir. 1938); Weldon v. Pickering Lumber Corp., 186 So. 371 (La. App. 1st cir. 1939). This fact tends strongly to support the good faith sale and resale (in the following cases defendant withheld stumpage from money due intermediary. The transaction was nevertheless regarded as a sale); Eaves v. Hillyer-Edwards-Fuller, Inc., 139 So. 510 (La.App. 2d cir. 1932); Windham v. Newport Co., 143 So. 538 (La.App. 1st cir. 1932) Cannon v. Tremont Lumber Co., 188 So. 431 (La.App. 2d cir. 1939); Weldon v. Pickering Lumber Corp., 186 So. 371 (La.App. 1st cir. 1939); Anthony v. Natalbany Lumber Co., Ltd., 187 So. 288 (La.App. 1st cir.1939); Scott v. Futrell, 197 So. 688, (La.App. 2d cir. 1940); Hatch v. Industrial Lumber Co., 199 So. 587 (La.App. 1st cir. 1941); Perkins v. Hillyer Deutsch Edwards, Inc., 199 So. 590 (La.App. 1st cir. 1941); Vincent v. Industrial Lumber Co., 199 So. 593 (La.App. 1st cir. 1941); Williams v. George, 15 So.2d 823 (La.App. 2d cir. 1943); Grant v. Consolidated Underwriters, 33 So.2d 575 (La.App. 2d cir. 1947). Cf. Stanley v. Industrial Lumber Co., Inc., 193 So. 367 (La.App. 1st cir. 1940) (defendant claimed it sold stumps to intermediary. Stumpage withheld by repurchase for benefit of defendant). But cf. Carter v. Colfax Lumber & Creosoting Co. [9 La.App. 497] 121 So. 233 (La.App. 2d cir. 1928).
“An illustration of the extent to which the position described above has been carried is furnished in Reed v. J. W. Jeffries Lumber Co., 9 So.2d 87 (La.App. 2d cir. 1942) In that case the owner of a tract of timberland refused to sell to an intermediary on a credit basis. As a result of negotiations, the timber was transferred directly to defendant lumber company, who paid cash and was named as purchaser in the deed. The purchase price, however, was charged by defendant against the intermediary’s account, to be credited as timber was cut and delivered by him to defendant. Chargeable also against the account were severance taxes and in *700 terest and carrying' charges on the money .advanced. The transaction was regarded as a bona fide sale from the intermediary’s employee under Section Six was dismissed. The court’s position was fortified by the observation that the intermediary had previously purchased timber through the financial assistance of defendant, that he had never served in the latter’s employment, and that part of the timber in question had been sold to third persons by the intermediary without objection by defendant.
“The most extreme example of the situation under discussion is the recent case, Grant v. Consolidated Underwriters (Grant v. Consolidated Underwriters, 33 So.2d 575 (La.App. 2d cir. 1947). See Note (1949) 9 Louisiana Law Review 573). Defendant tie company entered into negotiations with a landowner to purchase timber. The latter was to receive twenty cents from defendant for each tie cut. Defendant then engaged a sawyer, McAllister, to ctit the ties. He was paid the prevailing market price per tie after a deduction of the twenty cents for the landowner which defendant remitted directly to the latter. Claimant, an employee of McAllister, sought compensation against defendant for injuries received while he was cutting ties in furtherance of this arrangement. The court held that no relationship of principal and contractor existed between defendant and McAllister, claimant’s employer. It stated that defendant was a purchaser of manufactured ties. Strangely .enough, the opinion assumes that a principal cannot hire an independent contractor to do work upon property which the principal does not own at the time but expects to purchase thereafter. Although defendant doubtless agreed to purchase ties from the landowner, yet this should in no way affect his relationship to McAllister whose only participation in the scheme was to do a job for pay. The fact that the market price for .the ties was used as the basis upon which the contractor’s fee was fixed was a mere matter of convenience, and it in no way should affect the nature of the relationship. McAllister sold nothing to defendant; in fact it was not contemplated that he should at any time become owner either of the ties or of the logs from which they were made.
“The same attitude prevails when it is disputed whether the intermediary is a contractor or a purchaser from defendant. Situations controverted in this respect usually arise where there has been a purported sale by defendant of stumps or timber and the claim is made that the-alleged purchaser is in fact a contractor who has 'undertaken to clear the owner’s land under an arrangement whereby the stumps are to be sold to some third party. Employees of the intermediary have been consistently denied compensation under Section Six, Weldon v. Pickering Lumber Corp., 186 So. 371 (La.App. 1st cir. 1939); Stanley v. Industrial Lumber Co., Inc., 193 So. 367 (La.App. 1st cir. 1940). The factors emphasized are the same noted in the preceding pages-.”
We have concluded that insofar as the ties which were produced from the Fonte-not tract at St. Landry, Louisiana, the defendant was a purchaser of crossties and nothing more. Jack Hennessy never did see the Fontenot tract. It was Mr. Malone who directed the plaintiff as to the timber to be cut and hauled, and as to the location where the cut timber was to be delivered. The accident occurred on October 13 and the last ties purchased by. the defendant from Mr. Malone were consummated on October 2, 1951. From these facts it would appear that the relationship that existed between plaintiff and Malone was that of either employer and employee or independent contractor, and under the present jurisprudence of this state Mr. Malone would be liable for plaintiff’s compensation. However, the defendant was involved in this St. Landry operation solely as a purchaser of crossties and is therefore not liable for ' plaintiff’s compensation.
*701 The Lower Court predicated its decision on the case of Belaire v. Elder, La.App., 49 So.2d 508. There is a basic difference in the facts in the Belaire case and those in the instant case. ' There was a right to control and an actual 'control' in the Belaire case, which is entirely absent from the present case insofar as the operation on the Fontenot tract. Tf this accident in this case had happened during the Basile operation, then this case would be similar to the Belaire case.
We feel that the instant ‘ case is similar to the case of Kline v. Dawson, La.App., 84 So.2d 76 wherein we concluded that the defendant was a purchaser, and therefore not responsible for the compensation due the plaintiff.
Therefore for the above and foregoing reasons, the judgment rendered by the Lower Court is reversed and plaintiff’s suit dismissed. Since this suit was filed in forma pauperis, plaintiff is released from paying court costs.
Judgment reversed.
TATE, J., recused.