**JIMMIE FRATERRIGO v. STATE OF FLORIDA**

10 So. (2nd) 304                                    Division B
October 30, 1942

Wm. C. Pierce, for appellant.

J. Tom Watson, Attorney General, Millard B. Conklin and Woodrow M. Melvin, Assistant Attorneys General, and H. Tolbert Black, Special Assistant Attorney General, for appellee.

THOMAS, J.:

The solitary question presented in this appeal is the sufficiency of the evidence to justify a verdict finding the appellant guilty under an information charging that he "did unlawfully conduct a lottery for money, and by means of a lottery did dispose of money, and did sell shares or rights in a lottery drawing." There were three counts describing the lottery, respectively, as "New York bond," "bolita" and "Cuba bolita."

The information was based on Section 849.09, Florida Statutes, 1941, denouncing lotteries. Plainly, "New York bond," "bolita" and "Cuba bolita" fall in that category. The general scheme is to create a fund from the payments made by participants. The names derive from the manner of selecting the successful numbers, to the holders of which go the accumulated sum after deducting the share of promoters. Thus, the winning numbers in "bolita" and "Cuba bolita" are determined by a "throwing in Havana"; "New

York bond" by the total number of shares of stock sold on the New York bond market on a given date.

The substance of the state's testimony was: that on several occasions between the dates given in the formal charge witnesses "bought bolita," "played bond" and "Cuba" and were sold "bond," they designating the numbers of their choice; and that their dealings were had with the defendant. These statements were baldly made and the meager details of the transactions, as the witnesses gave them, left much to the imagination. According to their testimony the defendant, when approached for the purpose of securing from him a number, gave no "paper or evidence of any kind" and immediately "called up over the telephone." The identity and location of the person to whom he talked and the topic of the conversation were not known. These witnesses, two in number, who testified that they had procured from the defendant interests in various lotteries, manifested a surprising lack of knowledge when they attempted to describe their purchases.

In this appeal the state was content to rely on our opinions in LaBarbara v. State, 8 So. (2nd) 662, and Scaglione v. State, 9 So. (2nd) 87, asserting that by authority of these decisions the conviction here should be affirmed. We have examined the original files in those cases and do not find the evidence in them so nearly resembling that introduced in the instant one as to commit us to an affirmance. In each of those prosecutions the testimony against the defendant was much stronger and more definite than that produced against the appellant. For instance, in the former it was established that at the time the interest in the lottery was purchased the defendant made a notation

of the number and the initials given by the buyer. Later, when the participant called upon the defendant, the memorandum, which had been deposited in a box, was consulted by the defendant and the witness was given his winnings. Of course, the guilt of one violating the statute does not depend upon the success of a person to whom he has sold a lottery ticket but it is certainly evidence that the lottery was actually conducted and that there was a transaction in violation of the law.

In the latter case the defendant when arrested, admitted his wrongdoing to the officer and asked for some consideration at his hands. Here, too, the number chosen by the purchaser and the initials by which he was identified were recorded by the seller.

We conclude that the evidence was insufficient to establish, beyond a reasonable doubt, the guilt of the accused so the judgment is—

Reversed.

BROWN, C. J., TERRELL and CHAPMAN, JJ., concur.